Case No. 13-2003

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

————————————◆————————————

**GEORGIA PACIFIC CONSUMER PRODUCTS, LP,**

*Plaintiff – Appellee,*

*v.*

**VON DREHLE CORPORATION,**

*Defendant – Appellant.*

————————————◆————————————

On Appeal from the United States District Court for the Eastern District of North
Carolina, at Raleigh, Civil No. 5:05-cv-00478-BO

————————————◆————————————

**OPENING BRIEF FOR APPELLANT**
**VON DREHLE CORPORATION**

————————————◆————————————

Michael P. Thomas
PATRICK HARPER
& DIXON, LLP
P.O. Box 218
Hickory, NC 28603
(828) 322-7741

Carter G. Phillips
  *Counsel of Record*
Richard Klingler
Jacqueline G. Cooper
Nicolas W. Thompson
John Paul Schnapper-Casteras
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Counsel for Appellant von Drehle Corporation*

November 21, 2013

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _13-2003_    Caption: _Georgia Pacific Consumer Products, LP v. von Drehle Corporation, et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_von Drehle Corporation_    who is    _Appellant_    , makes the following disclosure:
(name of party/amicus)              (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
****************************

I certify that on    _08/26/2013_    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_/s/ Michael P. Thomas_                                      _08/26/2013_
(signature)                                                      (date)

[ Reset Form ]

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF AUTHORITIES ...............................................iv

INTRODUCTION ........................................................1

STATEMENT OF JURISDICTION...........................................3

STATEMENT OF THE ISSUES............................................4

STATEMENT OF THE CASE..............................................4

STATEMENT OF THE FACTS ............................................6

    A.   The Underlying Commercial Dispute ..................................6

    B.   GP's Multi-Front Litigation And Its Losses In The Eighth And Sixth Circuits ...................................................9

    C.   Litigation In The District Court And This Court ..............................11

        1.   Initial District Court Decision And Appeal In This Court .......11

        2.   Subsequent District Court Proceedings And Appeal In This Court ...................................................12

        3.   The District Court's Remedies Order .......................................15

SUMMARY OF ARGUMENT ............................................17

ARGUMENT ........................................................20

I.   The District Court's Award Of Treble Damages Rested On An Erroneous Legal Standard And Was Without Record Support ......................20

    A.   The District Court Trebled The Jury's Award Without Pointing To Any Inadequacy In GP's Compensation, As 15 U.S.C. § 1117(a) Requires, And No Such Basis Exists .................................22

    B.   The District Court Abused Its Discretion By Holding That Treble Damages Are Appropriate Solely Based On A Finding Of Willful Infringement Under 15 U.S.C. § 1117(a)...........................................26

C.    The Factors This Court Has Adopted To Evaluate Damages Where Compensation Is In Doubt Under 15 U.S.C. § 1117(a) Cannot Support An Award Of Enhanced Damages ............................ 28

II.   The District Court Abused Its Discretion By Deeming This Case Exceptional Based Only On The Jury's Finding of Liability And By Awarding Attorney Fees To GP Without Any Analysis Or Proof Of Bad Faith ................................................................................................... 34

A.    The District Court Erred By Deeming This Case Exceptional Solely On The Basis Of The Jury's Finding Of Liability For Contributory Infringement ......................................................................... 35

B.    The District Court Failed To Apply The Bad Faith Standard Required For Attorney Fee Awards Under The Lanham Act ............. 37

C.    Even If The District Court Had Conducted The Proper Analysis, The Record Contains No Evidence Of Bad Faith That Could Support An Attorney Fee Award ................................................. 43

III.  The District Court Abused Its Discretion By Awarding Prejudgment Interest Because This Court Has Never Held That Prejudgment Interest Is Available Under The Lanham Act And This Case Is Not "Exceptional" ................................................................................. 49

IV.   The District Court Abused Its Discretion By Awarding Injunctive Relief That Interferes With The Decisions Of Other Circuits ....................... 50

CONCLUSION ................................................................................................. 56

REQUEST FOR ORAL ARGUMENT ................................................................. 56

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................................... 58

CERTIFICATE OF SERVICE ........................................................................... 59

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Honda Motor Co. v. Two Wheel Corp.*,
   918 F.2d 1060 (2d Cir. 1990) ...............................................................49

*Aromatique, Inc. v. Gold Seal, Inc.*,
   28 F.3d 863 (8th Cir. 1994) .................................................................39

*Badger Meter, Inc. v. Grinnell Corp.*,
   13 F.3d 1145 (7th Cir. 1994) .........................................................*passim*

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack
      Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) .........................................................37, 43

*Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*,
   606 F. Supp. 2d 571 (M.D.N.C. 2009) .....................................29, 31, 39

*Emp'rs Council on Flexible Comp. v. Feltman*,
   384 F. App'x 201 (4th Cir. 2010) ........................................................48

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,
   952 F.2d 44 (3d Cir. 1991) ............................................................46, 47

*Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*,
   821 F. Supp. 2d 948 (N.D. Ohio 2011), *aff'd*,
   701 F.3d 1093 (6th Cir. 2012) ...........................................5, 10, 11, 44

*Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*,
   701 F.3d 1093 (6th Cir. 2012) .......................................................11, 44

*Ga.-Pac. Consumer Prods., LP v. Inland Supply Co.*,
   No. 3:09-CV-00246 (D. Nev. filed May 12, 2009) ............................11

*Ga.-Pac. Consumer Prods. LP v. Myers Supply, Inc.*,
   No. 6:08-cv-6086, 2009 WL 2192721 (W.D. Ark. July 23, 2009), *aff'd*,
   621 F.3d 771 (8th Cir. 2010) .....................................5, 10, 33, 44, 48

*Ga.-Pac. Consumer Prods. LP v. Myers Supply, Inc.*,
   621 F.3d 771 (8th Cir. 2010) .........................................................*passim*

*Ga.-Pac. Consumer Prods. LP v. Superior Janitor Supply, Inc.*,
No. 1:09cv323 (S.D. Ohio filed May 9, 2009) ....................................11

*Ga.-Pac.Consumer Prods.,LP v. von Drehle Corp.*,
645 F. Supp. 2d 532 (E.D.N.C. 2009), *aff'd in part, vacated in part*,
618 F.3d 441 (4th Cir. 2010) ......................................................12, 44

*Ga.-Pac.Consumer Prods. LP v. von Drehle Corp.*,
618 F.3d 441 (4th Cir. 2010) ...........................................5, 6, 12, 36

*Ga.-Pac. Consumer Prods. LP v. von Drehle Corp.*,
856 F. Supp. 2d 750 (E.D.N.C. 2012), *vacated*,
710 F.3d 527 (4th Cir. 2013) ......................................................5, 14

*Ga.-Pac.Consumer Prods. LP v. von Drehle Corp.*,
710 F.3d 527 (4th Cir. 2013) ......................................................6, 15

*Hayes v. N. State Law Enforcement Officers Ass'n*,
10 F.3d 207 (4th Cir. 1993) ......................................................50, 51

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
270 F.3d 298 (6th Cir. 2001) .....................................................53, 55

*Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*,
747 F. Supp. 2d 568 (W.D.N.C. 2010) ...............................................47

*Koon v. United States*,
518 U.S. 81 (1996) ......................................................................21

*Larsen v. Terk Techs. Corp.*,
151 F.3d 140 (4th Cir. 1998) ................................................*passim*

*Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*,
112 F.3d 1296 (5th Cir. 1997) ...................................................42, 45

*Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co.*,
152 U.S. 425 (1894)........................................................................7

*Motor City Bagels, L.L.C. v. Am. Bagel Co.*,
50 F. Supp. 2d 460 (D. Md. 1999)....................................................31

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
650 F.3d 423 (4th Cir. 2011) .....................................................41, 48

*In re Outsidewall Tire Litig.*,
   748 F. Supp. 2d 557 (E.D. Va. 2010) ...................................................42

*PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) ..............................................................51

*People for the Ethical Treatment of Animals v. Doughney*,
   263 F.3d 359 (4th Cir. 2001) .......................................................*passim*

*Retail Servs., Inc. v. Freebies Publ'g*,
   364 F.3d 535 (4th Cir. 2004) ......................................................34, 38

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)...............................................................................46

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*,
   675 F.2d 1160 (11th Cir. 1982) ...........................................................38

*Scotch Whiskey Ass'n v. Majestic Distilling Co.*,
   958 F.2d 594 (4th Cir. 1992) .......................................................38, 39, 41, 50

*Shlahtichman v. 1-800 Contacts, Inc.*,
   615 F.3d 794 (7th Cir. 2010) ...............................................................46

*Synergistic Int'l, LLC v. Korman*,
   470 F.3d 162 (4th Cir. 2006) ......................................................21, 29, 31, 32

*Texas Pig Stands v. Hard Rock Cafe Int'l, Inc.*,
   951 F.2d 684 (5th Cir. 1992) ...............................................38, 39, 43

*Thompson v. Haynes*,
   305 F.3d 1369 (Fed. Cir. 2002) ...........................................................25

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) ..............................................................38

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
   793 F.2d 1034 (9th Cir. 1986) .............................................................39

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
   530 F.3d 980 (D.C. Cir. 2008).............................................................46

*United States v. AMC Entm't, Inc.*,
    549 F.3d 760 (9th Cir. 2008) ...............................................................52, 53, 55

*Va. Soc'y for Human Life, Inc. v. FEC*,
    263 F.3d 379 (4th Cir. 2001), *overruled on other grounds by*
    *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544
    (4th Cir. 2012)...........................................................................50, 51, 52, 55, 56

*Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*,
    994 F. Supp. 350 (W.D.N.C. 1997) .................................................................42

## STATUTES

15 U.S.C. § 1114(1) .....................................................................................................9

15 U.S.C. § 1117.................................................................................................*passim*

## LEGISLATIVE HISTORY

S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132 ................39, 41

## OTHER AUTHORITIES

*Black's Law Dictionary* (9th ed. 2009)....................................................................39

GP Professional Product Listing, *available at*
    http://productcatalog.gp.com/CrossReference.aspx (last viewed Nov. 18,
    2013) .........................................................................................................................8

# INTRODUCTION

This case presents a series of issues regarding the appropriate legal standards governing the monetary remedies and scope of injunctive remedy that may be appropriate following a judgment of contributory trademark infringement. The district court's remedial order at issue in this appeal is the culmination of a multi-front, nationwide litigation campaign that Georgia-Pacific Corporation ("GP") undertook against von Drehle Corporation ("von Drehle") and the independent distributors of von Drehle's paper towels, designed to use contributory trademark claims to ensure that GP could tie sales of its paper towels to use of a particular towel dispenser that it manufactured. Although the undisputed, standard industry practice (including the practice generally followed by GP) is to use unbranded towels from various paper manufacturers in branded towel dispensers, GP asserted that manufacturers and distributors of unbranded towels not manufactured by GP contributed to trademark infringement when the unbranded towels were used in that particular GP dispenser. Federal courts in the Eighth Circuit concluded that the practice challenged by GP did not constitute contributory trademark infringement, and courts in the Sixth Circuit concluded that GP was barred from pursuing its claims there. Following a subsequent jury verdict in GP's favor, the district court below found that this same national practice not only constituted contributory trademark infringement, but was an "exceptional" case of

1

infringement that justified an award of attorney fees and prejudgment interest, merited the trebling of damages, and called for a nationwide injunction – extending even to conduct in circuits that had rejected GP's claims addressing the identical practice.

These remedial determinations rested on a series of legal errors. The district court's trebling determination ignored the governing standard of the relevant section of the Lanham Act, employed a test appropriate for a different statutory provision addressing counterfeiting, and failed to address the considerations set forth in this Court's relevant legal test. The district court's determination that attorney fees were warranted in this "exceptional" case similarly applied an erroneous standard that would make every contributory infringement case subject to a fees award and again failed to state or apply the test required by this Court. And, the imposition of a nationwide injunction ignored basic principles of inter-circuit comity required by this Court and prohibited, as unlawful, conduct that other courts have deemed permissible. All of these determinations more broadly ignored the only aspect of this case that is "exceptional," *viz.*, for most of the period of conduct giving rise to the jury's award of profits (2004-2011), the federal courts that had addressed the issue had determined that the conduct at issue was not actionable.

This Court has addressed this case in two principal decisions, which addressed the contributory infringement standard in 2010 and determined in 2013 that von Drehle could not assert defenses based on the preclusive effect of the decisions of other federal courts. Consistent with those decisions, this appeal does not challenge the validity of the jury verdict or the judgment entered against von Drehle, the jury's award of damages, the award of costs, the fact that von Drehle waived its ability to assert preclusion defenses, or even the entry of an injunction. The fact that von Drehle waived its defenses does not, however, render those federal decisions against GP irrelevant now, either for assessing von Drehle's intent and good faith for purposes of any enhancement of damages and award of fees or for assessing whether an injunction of nationwide breadth is appropriate (and the district court did not claim otherwise). And, nothing in the prior litigation can erase the district court's basic errors of law or provide record support for its conclusions where none exists.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over GP's federal claims under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. This Court has jurisdiction under 28 U.S.C. § 1291: this appeal arises from a final judgment entered July 29, 2013, and von Drehle filed its notice of appeal on August 12, 2013. Joint Appendix ("JA") 863.

## STATEMENT OF THE ISSUES

1.  Did the district court err in awarding treble damages by failing to follow the appropriate statutory standard requiring that any adjustment of damages under 15 U.S.C. § 1117(a) be compensatory, and by failing to apply the correct legal test established by this Court for evaluating damages under the Lanham Act?

2.  Did the district court err by applying an incorrect legal standard to find this case "exceptional" for purposes of awarding attorney fees under 15 U.S.C. § 1117(a) and by relying instead on nothing more than the jury's finding of liability?

3.  Did the district court err by determining that prejudgment interest is a remedy available under the Lanham Act and by awarding such interest without evidence that this case is "exceptional"?

4.  Did the district court err in imposing a nationwide injunction where two other courts of appeals have addressed the same underlying commercial dispute and rejected GP's claims that the same business practices are unlawful and other courts of appeals throughout the country have not addressed the issue?

## STATEMENT OF THE CASE

In July 2005, GP initiated this trademark infringement suit against von Drehle and one of the distributors of von Drehle's paper products in the United States District Court for the Eastern District of North Carolina.  JA62.  Starting in

2005, GP also filed nearly identical trademark infringement suits in four other

district courts against von Drehle and distributors of von Drehle's products.

While this case was pending, GP lost the actions it had brought in district

courts in the Sixth and Eighth Circuits. *See Ga.-Pac. Consumer Prods. LP v.*

*Myers Supply, Inc.*, No. 6:08-cv-6086, 2009 WL 2192721 (W.D. Ark. July 23,

2009), *aff'd*, 621 F.3d 771 (8th Cir. 2010) ("*Myers*"); *Ga.-Pac. Consumer Prods.*

*LP v. Four-U-Packaging, Inc.*, 821 F. Supp. 2d 948 (N.D. Ohio 2011), *aff'd*, 701

F.3d 1093 (6th Cir. 2012) ("*Four-U*").

This Court has addressed this case in two substantive decisions.  In the first,

this Court addressed the appropriate standard for trademark infringement and

reversed the district court's summary judgment in favor of von Drehle.  *Ga.-Pac.*

*Consumer Prods., LP v. von Drehle Corp.*, 618 F.3d 441 (4th Cir. 2010).  On

remand from the first appeal, the case was tried in the district court before a jury,

which rendered a verdict in GP's favor in January 2012.  JA572, 575.  The district

court then set aside that verdict after permitting von Drehle to raise preclusion

defenses based on the prior judgments in its favor.  *Ga.-Pac. Consumer Prods. LP*

*v. von Drehle Corp.*, 856 F. Supp. 2d 750 (E.D.N.C. 2012).  In March 2013, this

Court reversed the district court's determination that preclusion defenses could be

raised and directed the district court to reinstate the jury verdict and to "consider

5

[GP's] request for injunctive and other appropriate relief." *Ga.-Pac. Consumer Prods., LP v. von Drehle Corp.*, 710 F.3d 527, 536 (4th Cir. 2013).

On remand, in July 2013, the district court reinstated the verdict and granted GP's motions for a permanent nationwide injunction, attorney fees, treble damages, prejudgment interest, and costs. JA853, 861. von Drehle now appeals from aspects of the remedies order.

## STATEMENT OF THE FACTS

In order to understand the district court's legal errors in fashioning remedies in this case, it is necessary to review (a) the underlying commercial dispute; (b) the multi-front, duplicative litigation that GP pursued and lost in the Sixth and Eighth Circuits; and (c) the proceedings in this circuit leading to the eventual order of remedies in GP's favor.

### A.    The Underlying Commercial Dispute.

GP is a multinational company that controls at least 90 percent of the relevant paper towel market. JA805. von Drehle Corporation is a much smaller business owned by its employees and the von Drehle family. von Drehle manufactures and sells multiple paper products, such as unbranded (or generic) paper towels and toilet paper, and sells branded dispensers for those products that are used by businesses such as restaurants, hotels, offices, and other public facilities in their restrooms. *von Drehle*, 618 F.3d at 444. von Drehle sells its

6

paper towel products and dispensers primarily in bulk to distributors of janitorial supplies. Those distributors, in turn, resell the paper products to the businesses that own or lease the paper dispensers. *Id.* von Drehle does not control or own the distributors of its products. JA838-40, 845.

Since the nineteenth century, the sale and use of generic paper products to fill dispensers manufactured by other companies has been a widely accepted practice in the industry. More than a century ago, the Supreme Court recognized that the sale of generic toilet paper to refill a patented toilet paper dispenser did not infringe upon the dispenser manufacturer's intellectual property rights. *See Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co.*, 152 U.S. 425, 432-33 (1894). More recently, in GP's litigation over the same product and practice at issue here, the Eighth Circuit recognized that "[i]t is common practice in the industry, and not improper, to put one brand of towels in an unleased, universal dispenser displaying a different manufacturer's trademarks." *Ga.-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 773 (8th Cir. 2010); *see also id.* at 778 (noting that GP "concedes that it is a common and acceptable practice in the industry").

Consistent with this industry practice, some of von Drehle's generic paper products are compatible with other manufacturers' dispensers. Likewise, GP manufactures and continues to market some of its generic paper products for use in

7

other manufacturers' dispensers, including von Drehle's dispensers. *See, e.g.*, *id.* at 773 (noting that GP sells paper towels in this manner and expressly advocates this practice in its catalog).[1]

In 2002, GP introduced a line of motion-activated, hands-free paper towel dispensers called enMotion®. *Ga.-Pac. Consumer Prods.*, 618 F.3d at 446. GP also started selling paper towel rolls that are ten inches wide and have no trademarks printed on them for use in enMotion®. *Id.* In a departure from industry practice, GP sought to bundle its paper and dispenser products by seeking to have its customers that lease enMotion® dispensers use only paper towel refills made by GP. GP claims that the purchase of GP's paper towel refills is a condition of those leases. The prevalence and validity of these lease arrangements are disputed, but in any event, von Drehle is not a lessee and GP's claims were not for breach of contract or directed against its enMotion® customers.

In 2004, von Drehle developed a line of ten-inch paper towel rolls known by its model number, "810-B." *Id.* at 447. Consistent with past industry practice, von Drehle originally developed the 810-B towels for sale to distributors who supplied the paper to retail and other businesses with enMotion® dispensers. *Id.* Later, other manufacturers began making dispensers that use 810-B towels, and von

---

[1] *See* GP Professional Product Listing, *available at* http://productcatalog.gp.com/CrossReference.aspx (last viewed Nov. 18, 2013) (listing "[s]uggested . . . replacements" for paper towels manufactured by von Drehle and others). This practice is also referred to as "stuffing."

Drehle's distributors also supplied the 810-B paper to retail and other businesses that used those dispensers.  Today, at least five other manufacturers make ten-inch dispensers, including von Drehle, which has approximately 18,000 such dispensers in current use.  JA834-35.  GP also makes several sizes of "universal" dispensers bearing GP's trademarks, and it does not attempt to bundle those dispensers with its paper products or to require businesses with those dispensers to use GP paper towels.  *See infra* p. 30.  Distributors supply paper manufactured by other businesses, as well as GP paper, to owners or lessees of those "universal" dispensers.

### B.    GP's Multi-Front Litigation And Its Losses In The Eighth And Sixth Circuits.

Starting in 2005, GP initiated nearly identical trademark enforcement suits in five different district courts against von Drehle and distributors of von Drehle products, including the suit at issue here.  Unlike most trademark disputes that allege the intentional use of another's trademark, GP has challenged use of an unbranded product, and GP's main theory has been contributory trademark infringement, a form of secondary liability under the Lanham Act, 15 U.S.C. § 1141(1).  GP has argued that, by selling paper towels compatible with the enMotion® dispenser, von Drehle and its distributors "contributed" to trademark infringement committed by the end users (hotels, restaurants, etc.) that do not follow GP's bundling directive and instead place von Drehle towels in enMotion®

dispensers – a practice that GP claims causes a likelihood of confusion among restroom consumers about the origin of the towels. In each jurisdiction, GP asserted the same core factual allegations, employed the same legal theories, and used the same witnesses and consumer surveys.

Pursuing this claim-splitting strategy, GP for years suffered a string of losses. In September 2008, GP sued Myers Supply Incorporated, a distributor of von Drehle products in Arkansas, claiming contributory trademark infringement. In July 2009, GP lost that suit after a bench trial. The district court concluded that the sale of von Drehle 810-B towels did not create a "likelihood of confusion" among consumers as to the origin of the towels. *Myers*, 2009 WL 2192721, at *6-8. The court found that GP itself engaged in the same practice of "suggest[ing] replacement towels for other manufacturers' towel" dispensers, including branded dispensers. *Id.* at *7. The Eighth Circuit affirmed, holding that the district court rightly "credit[ed] . . . the testimony from industry insiders," including from GP's "own regional manager," "own catalog," and "own practices," which showed that it was entirely "acceptable . . . to place towels of one brand in [a] dispenser bearing the marks of a different brand." 621 F.3d at 776-77.

In November 2011, GP lost another contributory trademark infringement case against an Ohio distributor of von Drehle products. *Four-U,* 821 F. Supp. 2d 948. That district court applied the judgment in *Myers* and held that GP's claims

10

were precluded, because there was "no dissimilarity of facts" between that case

and *Myers*. *Id.* at 953-55. The Sixth Circuit affirmed, holding that both the district

court and Eighth Circuit had correctly "relied heavily upon general, pervasive

industry practices" of selling generic towels for others' dispensers "to conclude

that there was no likelihood of confusion." *Ga.-Pac. Consumer Prods. LP v. Four-

U-Packaging, Inc.*, 701 F.3d 1093, 1097-98 (6th Cir. 2012).[2]

### C.   Litigation In The District Court And This Court.

The litigation between GP and von Drehle leading to this appeal involved

(1) an initial district court decision in von Drehle's favor in 2009, reversed by this

Court and remanded for further proceedings; (2) a further district court decision

and judgment in von Drehle's favor in 2012, on other grounds, also reversed by

this Court; and (3) the district court's decision at issue here, which entered

judgment against von Drehle and granted GP attorney fees, prejudgment interest,

treble damages, costs, and a permanent, nationwide injunction.

### 1.   Initial District Court Decision And Appeal In This Court.

In its July 2005 complaint against von Drehle in the Eastern District of

North Carolina, GP alleged several claims arising from von Drehle's sales of 810-

---

[2] GP brought two other cases. One remains pending, and the other was recently dismissed without prejudice. *See Ga.-Pac. Consumer Prods. LP v. Superior Janitor Supply, Inc.*, No. 1:09cv323 (S.D. Ohio filed May 9, 2009) (pending); *Ga.-Pac. Consumer Prods., LP v. Inland Supply Co.*, No. 3:09-CV-00246 (D. Nev. filed May 12, 2009) (dismissed).

B paper towels, including contributory trademark infringement.  JA62.  The district court in August 2009 granted summary judgment in von Drehle's favor on all of GP's claims.  *Ga.-Pac. Consumer Prods. LP v. von Drehle Corp.*, 645 F. Supp. 2d 532, 541 (E.D.N.C. 2009).  The district court found that "[t]he marketing of paper towel rolls for use in a competitor's dispenser is common practice within the industry" and that "GP, itself, [had] marketed paper towel rolls for use in a von Drehle dispenser."  *Id*. at 538.  It reasoned that GP had failed to show that sales of von Drehle's paper towels had caused consumer confusion among business owners who purchased the towels from distributors.  *Id.* at 536-37.

This Court rejected that reasoning, set aside the summary judgment order, and remanded the case for further proceedings.  *Ga.-Pac. Consumer Prods.*, 618 F.3d at 457-58.  This Court concluded that the "district court erred in limiting its likelihood of confusion inquiry to distributors who purchased 810-B [towels] and their respective end-user customers" and not considering potential confusion among the non-purchasing public.  *Id.* at 453.  It held that the evidence of that confusion submitted by GP created a material dispute of fact that precluded a grant of summary judgment in von Drehle's favor.  *Id*. at 457-58.

### 2.  Subsequent District Court Proceedings And Appeal In This Court.

In November 2010, von Drehle moved to supplement its answer pursuant to Fed. R. Civ. P. 15 to add the defenses of claim and issue preclusion based on the

decision in *Myers*. The district court initially denied von Drehle's motion based in part on the passage of time since *Myers* was issued.[3] In November 2011, GP suffered its district court loss in *Four-U,* the Ohio case noted above. Thereafter, von Drehle filed a second motion to supplement its answer to include preclusion defenses. As trial approached, von Drehle also filed a petition for writ of prohibition with this Court to stay further proceedings, which this Court denied in December 2011. The district court chose not to rule on von Drehle's Rule 15 motion and sent the sole remaining claim of contributory trademark infringement to trial, which took place over three days in January 2012.

At trial, GP repeatedly represented that together with an injunction, the sole monetary remedy it sought was the disgorgement of von Drehle's profits from 810-B towels. *See* JA269 (GP's opening statement: von Drehle's $794,000 in profits are "the only damages [GP] will seek"); JA541-42 (GP's closing argument: von Drehle "made a profit of $794,000 from the time that they put [the 810-B towels] on the market in 2004 through 2011[,] [a]nd that's what we're asking you for, the profits, give us the profits that you made trading on our name and our trademarks"). The calculation of profits was based on sales of 810-B towels

---

[1] In October 2011, von Drehle and a distributor denied intervenor status (Myers Supply, Inc.) sought review of the denial of intervention and the related motion to dismiss on preclusion grounds. After von Drehle secured eventual relief from the district court, von Drehle and the distributor secured dismissal of the appeal.

13

eventually used in dispensers made by GP and in dispensers made by other manufacturers, including sales in regions where courts had rejected GP's contributory infringement claims.

The district court instructed the jury that in order to find contributory trademark infringement, it had to determine whether von Drehle "intentionally induced a merchant down the chain of distribution to pass off the manufacturer's products as that of the trademark owner" or "continued to supply a product which could readily be passed off to a particular merchant who it knew was mislabeling the product with the trademark owner's mark." JA564.

The jury rendered a verdict in GP's favor. It found that von Drehle infringed GP's trademark. JA572, 575. In response to the question of "what amount of damages, if any, has the plaintiff established by a preponderance of the evidence," the jury answered $791,431, adding in a handwritten notation: "when the cease [and desist] letter came out [in] Jan[uary] [20]05." JA575. This amount equated to the sum GP asserted for von Drehle's profits. *See* JA269, 541-42.

After trial, GP moved for attorney fees, treble damages, prejudgment interest, and costs, as well as injunctive relief. The district court instead granted von Drehle's renewed Rule 15 motion, permitting von Drehle to amend its answer to include preclusion defenses, and then granted its renewed motion for judgment as a matter of law. *Ga.-Pac. Consumer Prods.*, 856 F. Supp. 2d at 757. The court

found that GP's claims against von Drehle involved "the same issue" and "the same core of operative facts" as in *Four-U* and *Myers*. *Id.*

GP appealed and, in March 2013, this Court reversed the district court's decision to vacate the jury's verdict. *Ga.-Pac. Consumer Prods.*, 710 F.3d at 527. It held that the district court had abused its discretion in granting von Drehle's motion to add preclusion defenses, in part because von Drehle's delay in seeking to amend its answer waived those defenses and the district court lacked the inherent authority to permit the defenses to be waived. *Id.* at 533-36. It also noted that not permitting the jury to resolve the issue of consumer confusion was inconsistent with its prior mandate. *Id.* at 536 n.13. This Court vacated the district court's judgment and remanded the case "with the specific instruction that the district court reinstate the jury verdict in favor of Georgia-Pacific and consider Georgia-Pacific's requests for injunctive and other appropriate relief." *Id.* at 536.

This Court denied von Drehle's petition for rehearing or rehearing en banc in April 2013 and denied its motion to stay the mandate. The Supreme Court denied certiorari on October 7, 2013.

### 3.     The District Court's Remedies Order.

On remand, GP renewed its previous motions for attorney fees, prejudgment interest, treble damages, costs, and a permanent injunction. *See generally* D. Ct. Dkt. No. 383. At the hearing on the motion, von Drehle reiterated its position that

15

a prevailing plaintiff seeking attorney fees in this circuit must establish that the defendant acted in bad faith. JA829. GP did not dispute this principle or claim that it had been harmed in any manner not already compensated by the jury's profit-based award. JA808, 811, 817. von Drehle also argued that if the district court were to issue an injunction, its scope should, at a minimum, be limited to this circuit and take into account the decisions of other courts of appeals. JA849.

On July 28, 2013, the district court reinstated the jury verdict and issued the remedial order under review. It granted GP's motion for a permanent injunction against von Drehle, stating:

> Plaintiff has protected trademark rights enforced by this permanent injunction in its enMotion, Georgia-Pacific, GP, and Hand Design marks. The protected trademark rights include the right of plaintiff to enforce the use of only their paper towel products in their enMotion dispensers. Defendant is hereby ENJOINED from interfering directly or indirectly with plaintiffs trademark rights, and any deliberate or purposeful placement of defendant's paper towels in plaintiffs enMotion dispensers shall constitute a violation of this permanent injunction. Defendant shall notify each of its distributors of this injunction, and shall file with the Court a report affirming its compliance with this injunction within thirty days of its entry.

*See* JA854-55. The court did not limit the geographical scope of the injunction.

The district court also granted GP's motion for attorney fees, prejudgment interest, and treble damages, as well as its bill of costs in the following amounts: $2,374,293 in treble damages; $2,225,782.35 in attorney fees; $204,450 in

16

prejudgment interest; and $82,758.16 in costs.  JA860.  The district court based its awards of attorney fees, prejudgment interest, and treble damages on its finding that von Drehle "willfully and intentionally engaged in contributory trademark infringement."  The court noted that Steven von Drehle had testified "that von Drehle's 810B towels were specifically designed to fit the enMotion dispenser and that he knew that 810B towels would be stuffed into plaintiff's enMotion dispenser," and reasoned that because "the jury in this matter has concluded that such action constitutes contributory trademark infringement," the infringement was willful and intentional, and attorney fees, prejudgment interest, and treble damages were therefore warranted.  JA855-58.  The district court made no finding that von Drehle acted in "bad faith" and cited only its finding of willful infringement to justify trebling the jury's award.  Finally, the district court awarded prejudgment interest and costs with little explanation.  JA858-59.

### SUMMARY OF ARGUMENT

The district court's award of approximately $4 million in attorney fees, prejudgment interest, and enhanced damages, and its imposition of a nationwide injunction, arose from the application of erroneous legal standards.  Even if the correct standards are applied, the context and record of this case – including the accepted industry practice at issue and the several federal court decisions rejecting

17

GP's claims – completely undermine any basis for the imposition of either the extraordinary monetary relief or the nationwide injunction.

Several legal errors led to the district court's trebling of the jury's profit-based award of $791,431.  At trial, GP asked the jury to fully compensate it by awarding it the total amount of von Drehle's profits on 810-B towel sales, including those used in dispensers other than GP's and in locales where GP's claims had been rejected.  The jury did so.  Neither GP nor the district court ever suggested that this award did not fully compensate GP.  The applicable provision of the Lanham Act, 15 U.S.C. § 1117(a), thus barred any enhancement of the jury award because it prohibits any award beyond full compensation.  The district court also applied a wholly incorrect legal standard, drawn from case law involving a different provision of the Lanham Act – 15 U.S.C. § 1117(b) – that mandates treble damages in circumstances indisputably not present here.  And, even if there were any question whether GP had been adequately compensated, the district court failed to apply this Court's six-part test for resolving that issue – a test that cannot be met in this case.

The district court likewise applied an incorrect legal test in awarding attorney fees.  Under 15 U.S.C. § 1117(a), attorney fees are appropriate only in "exceptional" cases, and the court found this case exceptional based on nothing more than evidence indicating that von Drehle knew its towels would be used to

18

refill GP's dispensers and the jury's finding that this conduct constituted contributory infringement. That standard would allow attorney fees in every contributory infringement case, not the "exceptional" case. The district court compounded its error by failing to apply or analyze the bad faith standard established by this Court. Even had the court applied that standard, nothing in the record could satisfy the standard. von Drehle's conduct was not malicious or egregious; and the only "exceptional" aspect of this case is that industry practice and federal court decisions directly on point supported rather than called into question the lawfulness of the conduct at issue.

Because the district court based its prejudgment interest award solely on its "exceptional case" finding, the same errors that undermine the award of attorney fees also render the interest award an abuse of discretion. And, this Court has never found that prejudgment interest is warranted based on a finding of contributory trademark infringement.

The district court also ignored applicable law in granting a nationwide injunction in spite of conflicting decisions in two other circuits about the same underlying commercial dispute. The injunction's geographical scope not only ignores this Court's cases holding that comity and coordination among circuits provide important guidance in evaluating any legal issue, but also undermines the

19

decisions of two circuits and prohibits, as unlawful, conduct that those circuits

deemed lawful or determined GP could not redress.

## ARGUMENT

### I.    The District Court's Award Of Treble Damages Rested On An Erroneous Legal Standard And Was Without Record Support.

At trial, the jury awarded GP $791,431.  JA855.  That figure reflected the

entire sum that GP sought, based on the full amount of von Drehle's profits on ten-

inch towel sales, regardless of the brand or locale of dispensers in which those

towels were placed, from approximately January 2005 until a few months before

the jury rendered its verdict in January 2012.  *See* JA43-44, 306-08, 541-42.

In trebling that award to $2,374,293, the district court relied on 15 U.S.C.

§ 1117(a) and *Larsen v. Terk Technologies Corp.*, 151 F.3d 140 (4th Cir. 1998) – a

case involving a different remedial provision – and found that "[t]rebling of

damages is appropriate when there has been a finding of willful or intentional

infringement."  JA855.  The district court pointed to testimony indicating that von

Drehle's 810-B towels were designed to fit GP's enMotion® dispenser and that

Steven von Drehle knew those towels would be stuffed into GP's enMotion®

dispenser.  JA855.  The court reasoned that because the jury determined that von

Drehle's deliberate "stuffing" constituted contributory trademark infringement, the

infringement was willful and treble damages were appropriate.  The district court

20

never suggested that GP was not fully compensated by the jury's award of all of von Drehle's relevant profits in this case.  JA855-56.

The district court's determination was based on three basic legal errors. *First*, the district court failed to point to any inadequacy in compensation to GP as a basis for enhancing the jury award, as Section 35(a) of the Lanham Act, enacted at 15 U.S.C. §1117(a), plainly requires.  No such basis exists here, and GP did not even claim that the jury's award left it inadequately compensated.  *See infra* Part I.A.  *Second*, the district court applied an erroneous legal standard, applicable to a different provision of the Lanham Act not at issue in this case, 15 U.S.C. § 1117(b).  That provision requires a trebling of damages in circumstances not present here.  *See infra* Part I.B.  *Third*, even if GP could somehow be viewed as uncompensated by the jury award, the district court failed to apply the appropriate six-part test that this Court has established for addressing compensatory damages under the Lanham Act.  *See infra* Part I.C.  That test cannot be satisfied in this case.

This Court reviews the district court's enhanced damages award for abuse of discretion.  *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006).  Applying an erroneous legal test is an abuse of discretion, as is reaching a conclusion lacking any record support.  *See Koon v. United States*, 518 U.S. 81, 100 (1996).

**A.    The District Court Trebled The Jury's Award Without Pointing To Any Inadequacy In GP's Compensation, As 15 U.S.C. § 1117(a) Requires, And No Such Basis Exists.**

Section 1117(a) establishes a framework that is intended only to compensate a party for the injury it sustained due to the infringement of its mark.  The district court failed to follow this legal standard and abused its discretion by trebling the jury's already fully compensatory award because no basis existed under 15 U.S.C. § 1117(a) for this upward adjustment.  The district court's award in this case is plainly improper because it exceeds the full compensation requested by GP and awarded by the jury.

Section 1117(a) provides a prevailing plaintiff with three methods of recovery: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a); *see also Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994).  If the plaintiff's recovery is based on profits, and the district court determines that such recovery is "inadequate or excessive," the court "may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  15 U.S.C. § 1117(a).  If, by contrast, the recovery is based on actual damages, "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  *Id.* Regardless of the method of recovery, the sum awarded by the court "shall

22

constitute compensation and not a penalty." *Id.* This statutory language makes clear that Section 1117(a) sets forth a framework for recovery that prohibits any award beyond full compensation. *See Badger Meter*, 13 F.3d at 1157.

The record in this case, however, shows that GP was fully compensated by the jury's award, making the district court's enhancement an abuse of discretion and an improper penalty. Neither GP nor the district court articulated any rationale or cited any evidence to contradict that conclusion. To the contrary, the jury awarded GP the full recovery that it sought – *i.e.*, the full amount of von Drehle's profits on ten-inch towel sales from 2005 to near the end of 2011. *See* JA43-44, 269; D. Ct. Dkt. No. 326, at 13-14. GP's trial counsel argued to the jury in his opening statement that "the evidence will show that von Drehle in seven years . . . made, in round numbers, $794,000 on [ten-inch] paper as profit, and *those are the only damages we will seek*, make them give up the profits they made on this wrongful product." JA269 (emphasis added). Trial counsel reiterated the same point in his closing argument, stating that von Drehle "made a profit of $794,000 . . . [a]nd that's what we're asking you for, the profits, give us the profits that you made . . . ." JA541-42. In its post-trial motions seeking treble damages, and at the hearing on remedies before the district court, GP did not argue the jury's award was inadequate compensation or that it had suffered harm that remained uncompensated. Instead, GP simply asserted – and the district court apparently

23

agreed – that trebling is appropriate when infringement is intentional.  *See*, *e.g.*, JA817-18; D. Ct. Dkt. 326, at 19-20; D. Ct. Dkt. 400, at 6.

The standard advanced by GP and adopted by the district court, that "[t]rebling of damages is appropriate when there has been a finding of willful or intentional" infringement, JA855, is inconsistent with the compensatory requirement of Section 1117(a) unless there is some other basis to conclude that anything less than three times the jury's award would have been inadequate compensation.  Yet, as GP's own statements at trial and in its post-trial pleadings show, that is plainly not the case here.  GP received everything it requested, and neither GP nor the district court pointed to anything indicating that the jury's award was less than fully compensatory.

The error of the district court's upward adjustment is further confirmed by the fact that the jury's award far exceeded von Drehle's profits – or any harm to GP – attributable to the infringement at issue in this case.  As noted above, the jury awarded GP *all* of von Drehle's profits on ten-inch towel sales between 2005 and late 2011.  It is undisputed, however, that for much of that period only a portion of von Drehle's ten-inch towels were eventually placed in GP's enMotion® dispensers.  Many of the towels were placed in so-called universal dispensers manufactured by GP and others, including von Drehle, where there is no allegation of trademark infringement – yet the jury awarded GP all of von Drehle's profits

24

from those sales as well.  *See* JA834-38.  Moreover, some of those profits came from sales in areas where the federal courts had concluded either that von Drehle's practices were lawful or that GP's claims to the contrary were barred.  The jury's award in these ways *overcompensated* GP for any losses attributable to von Drehle's infringement.  And that was before the district court adjusted the award upward.

The district court's error is also underscored by the plain language of Section 1117(a), which does not provide that an award based on profits, like the one here, may be trebled.  Instead, the statute provides that a profit award may be adjusted up or down, but only where just and required by the need to compensate the defendant.  *See* 15 U.S.C. § 1117(a).  In contrast, the statute's "three times" language addresses damages-based awards, not profit-based awards, and for this reason some courts have categorically prohibited the trebling of profit-based awards.  *See*, *e.g.*, *Thompson v. Haynes*, 305 F.3d 1369, 1380 (Fed. Cir. 2002) ("By the terms of [Section 1117(a)], 'damages' are to be treated separately from 'profits.'  As for damages, the court may award up to three times actual damages, depending on the circumstance of the case.  As for profits, however, the court is not authorized to award up to three times the amount proved.  For profits, the court is constrained to award the amount proved, subject only to an adjustment, up or down, where the recovery would be otherwise unjust.").  Whether or not a profit-

based award can properly be adjusted upward "three times" pursuant to Section 1117(a), such an adjustment would, at a minimum, have to be supported by evidence suggesting that the award was compensatory and not a penalty. *See* 15 U.S.C. § 1117(a) (the sum awarded by the court "shall constitute compensation and not a penalty"). That is simply not the case here.

## B.   The District Court Abused Its Discretion By Holding That Treble Damages Are Appropriate Solely Based On A Finding Of Willful Infringement Under 15 U.S.C. § 1117(a).

The district court compounded this legal error by applying an erroneous legal standard. Citing this Court's opinion in *Larsen*, 151 F.3d at 150, the district court reasoned that "[t]rebling of damages is appropriate when there has been a finding of willful or intentional infringement" and, based on that principle, concluded that its finding of willful infringement was sufficient to justify the treble award. JA855.

The district court's reasoning that trebling follows from a finding of intentional infringement under Section 1117(a), and its reliance on *Larsen*, were erroneous. The correct standard is that damages are limited to those that compensate the plaintiff, *see supra* Part I.A, and this Court has set forth a six-part test for determining how to address damages under the Lanham Act when damages are claimed to be inadequate. *See infra* Part I.C. *Larsen*, however, involved a different remedial provision of the Lanham Act, 15 U.S.C. § 1117(b). That section

26

applies specifically to the use of counterfeit marks, which is not at issue here. This is why the district court based its award on 15 U.S.C. § 1117(a), not 15 U.S.C. § 1117(b). The two provisions are critically different. Section 1117(b) instructs that "the court *shall* . . . enter judgment for [treble damages]" upon a finding of violation (emphasis added), whereas Section 1117(a) is merely permissive. For that reason, in a case involving Section 1117(b), this Court affirmed an award of treble damages that was supported by a finding of intentional infringement. *See Larsen*, 151 F.3d at 150 (citing Section 1117(b)). Because *Larsen* involved a remedial provision that *mandates* enhanced damages for much more serious conduct that is not at issue here,[4] that decision's legal standard is inapplicable. The district court abused its discretion in relying upon it.

Furthermore, the district court did not even correctly apply the standard articulated in *Larsen*. *Larsen* does not hold, as GP urged in its briefing below, *see* D. Ct. Dkt. No. 326, at 19, and, as the district court reiterated in its Order, that "[t]rebling of damages is appropriate when there has been a finding of willful or intentional infringement." JA855. Instead, *Larsen* affirmed a treble damages

---

[4] The district court's reliance on *Larsen* also confirms that the treble damages award improperly functioned as an award beyond the full compensation reflected in the jury's award. *See supra* Part I.A. Given the flagrant nature of the conduct targeted by Section 1117(b), that provision, unlike Section 1117(a), is meant to operate as a "'penalty' against the defendant." *Badger Meter*, 13 F.3d at 1157. However, the statute precludes an award under Section 1117(a) from operating as a penalty.

award where "the record clearly show[ed] . . . intentional, willful, *knowing*, *surreptitious*, *and fraudulent passing off*." 151 F.3d at 150 (emphasis added). The actual language used in *Larsen* is consistent with the conduct at issue in Section 1117(b) and plainly sets a higher bar than that applied by the district court. Given that the conduct at issue in *Larsen* involved the actual counterfeiting of another's product and mark, *id.* at 142-45, 150, and that this case – in which it is undisputed that von Drehle did not imitate GP's mark and customers knew exactly what they were purchasing – did not involve any "knowing, surreptitious or fraudulent passing off," the district court's misapplication of the standard used in *Larsen* would be an abuse of discretion even if *Larsen* were applicable here.

### C.    The Factors This Court Has Adopted To Evaluate Damages Where Compensation Is In Doubt Under 15 U.S.C. § 1117(a) Cannot Support An Award Of Enhanced Damages.

Even if this case did involve a determination of whether an upward adjustment to the jury award was appropriate to ensure that GP be adequately compensated (and it does not), the district court erred by failing to apply this Court's test that addresses that issue. This Court has adopted the following six-factor test "for consideration in connection with damages issues in Lanham Act litigation":

> "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5)

the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off."

*Synergistic, Int'l*, 470 F.3d at 175 (quoting *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002)).[5]  The district court's assertion that treble damages are appropriate solely based on a finding of intentional infringement is inconsistent with this test.  One of those factors – "whether the defendant had the intent to confuse or deceive" – does bear on "whether there has been a willful infringement on the trademark rights of the plaintiff."  *Id.*  But this Court identified five other factors that courts must consider as well, which the district court failed to do.  This alone was an abuse of discretion.  *See id.*

The record clearly does not support a conclusion that the six-factor test justifies an enhancement of the jury's award.  The first element of the test, whether there is an "intent to confuse or deceive," does not support any enhancement for several reasons.  *First*, even if von Drehle may have manufactured the paper knowing that some of it would be placed in GP's branded dispensers, federal courts in two circuits had held that this practice was not unlawful, because no confusion resulted from the practice, or that GP could not pursue claims to the

---

[5] Although *Synergistic* did not involve the trebling of damages, this Court stated that the six-factor test applies to all "damages issues in Lanham Act litigation." 470 F.3d at 175.  *See*, *e.g.*, *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 588-90 (M.D.N.C. 2009) (applying the six factors in *Synergistic International* to deny a plaintiff's request for treble damages).  GP has acknowledged that the six-factor test is applicable here.  JA817-18.

contrary. *See supra* pp. 5, 9-11. *Second*, the eventual purchasers of the paper towels, the businesses that provided dispensers for use by the public, knew precisely what paper they were purchasing, so there could be no intent to deceive them. *Third*, an intent to deceive public users of the restroom dispensers cannot be inferred: the paper towels were not separately branded, and the industry practice of using unbranded paper from one company in a dispenser manufactured by another company has indisputably been a longstanding, widespread industry practice, *see Myers*, 621 F.3d at 773; *see also* JA309-10, 380-83, 385-91, 515. Whether that practice results in consumer confusion has been resolved differently by different finders of fact. *See Myers*, 621 F.3d at 777; *see also* JA307. The courts that considered GP's contributory infringement claims in the 2005 to 2011 time period rejected them. *See supra* pp. 5, 9-11. von Drehle, therefore, plainly could not have had knowledge that its conduct was unlawful before January 2012, yet the damages award in this case was based on its conduct during the 2005 to 2011 time period. *See* JA43-44.

Finally, the district court's finding of willfulness does not support a finding of an intent to deceive any party. As in the attorney fees context (*see infra* Part II.B), this Court, in evaluating damages under the Lanham Act, has interpreted the question of "whether there has been a willful infringement on the trademark rights of the plaintiff" to mean "whether the defendant has acted in *bad faith*."

*Synergistic Int'l*, 470 F.3d at 175 (emphasis added); *see also Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 588 (M.D.N.C. 2009) (analyzing the issue of bad faith in evaluating the plaintiff's request for enhanced damages); *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 488 (D. Md. 1999). The district court, however, did not evaluate whether GP showed that von Drehle acted in bad faith. The court found only that von Drehle, by selling towels that it knew would be stuffed in GP's dispensers, intentionally engaged in conduct that the jury later found to be infringing. JA855-56. This finding does not establish bad faith, and moreover, the record is insufficient to support a finding of bad faith because there is no evidence that von Drehle knowingly violated the law or acted maliciously or egregiously. *See infra* Part II.C.

The remaining *Synergistic* factors either do not support or weigh against an award of enhanced damages. The second factor – whether sales have been diverted – "involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities." *Synergistic Int'l*, 470 F.3d at 175. Although some end-user customers purchased von Drehle's ten-inch towels instead of GP's towels, this factor does not weigh in favor of *enhanced* damages because any diverted sales are captured by the jury's award. *See supra* Part I.A.

The third factor – the adequacy of other remedies, *Synergistic Int'l*, 470 F.3d at 176 – weighs strongly against treble damages. GP was awarded *all* of von Drehle's profits from ten-inch towel sales between 2005 and 2011 as compensation for past infringement. JA855-56. Furthermore, the district court entered an injunction prohibiting von Drehle from engaging in future infringement. JA853-55. Those remedies are more than adequate to address any injury that GP may have suffered. *Synergistic Int'l*, 470 F.3d at 176. Indeed, those are the only remedies that GP asserted were appropriate to protect its interests. JA269 ("What we want quite simply is that von Drehle quit doing this and to have to give up the profits it has made by doing this. . . . [T]hose are the only damages we will seek . . . .").

The fourth factor – any unreasonable delay by the plaintiff in asserting his rights – is neutral. There was no delay in this case, but this factor, by its terms, only gives weight to an unreasonable delay. 470 F.3d at 176. A plaintiff's promptness in asserting his rights does not weigh in favor of enhanced damages.

The fifth factor – the public interest in making the unlawful conduct unprofitable, *id.* – also weighs against enhanced damages. Even assuming that the public has an interest in making the conduct at issue in this case unprofitable, the jury's profit-based award fully accomplishes that goal. Because only a portion of von Drehle's ten-inch towels were placed in GP's enMotion® dispensers and

32

because the award rested in part on sales in circuits where the conduct was not unlawful or GP could not assert claims of unlawfulness, the jury's award encompassed sales that exceeded the amount necessary to render von Drehle's unlawful conduct unprofitable. This factor therefore weighs against treble damages.

The sixth and final factor – whether this a case of palming off – likewise weighs against enhanced damages. This factor considers whether the defendant "misrepresent[ed] to the public that the defendant's products were really those of the plaintiff." *Id.* As noted, von Drehle never attempted to imitate GP's mark or pass it off as its own. Instead, von Drehle sold its towels in boxes bearing its own marks, which look nothing like those of GP, and end-user purchasers knew exactly what they were buying. JA376-77; *see also Myers*, 621 F.3d at 775. In addition, the paper towels themselves are unmarked, so that any confusion among bathroom customers depends on what is, at most, an indirect connection between a trademarked dispenser and an unmarked paper towel. *Myers*, 2009 WL 2192721, at *7. This case does not involve any "palming" of "passing off." *Cf. Larsen*, 151 F.3d at 150.

In sum, four of the six factors that this Court considers in assessing Lanham Act damages weigh against enhanced damages. Another factor is neutral. Only one factor – whether sales were diverted – may weigh in favor of damages, but

does not support *enhanced* damages. Taken together, the application of the six factors shows that the district court's treble damages award could not be supported by the *Synergistic* test even if that test applied in circumstances where there is no doubt that an unenhanced award provides full compensation.

## II. The District Court Abused Its Discretion By Deeming This Case Exceptional Based Only On The Jury's Finding of Liability And By Awarding Attorney Fees To GP Without Any Analysis Or Proof Of Bad Faith.

The relevant remedial provision of the Lanham Act, 15 U.S.C. § 1117(a), provides that "in exceptional cases," the court "may award reasonable attorney fees to the prevailing party." The district court concluded that "this is an exceptional case warranting" attorney fees on the ground that von Drehle intentionally provided paper towels that would be placed in GP's enMotion® dispenser and on the jury's finding that such conduct amounted to infringement. JA855-56. The district court did not hold that von Drehle willfully violated the law or that its actions were extraordinary, malicious or egregious, but nonetheless granted GP's fee request in the amount of $2,225,782.35. JA856. This Court reviews the district court's decision to award attorney fees for abuse of discretion. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) ("*PETA*").

34

## A.    The District Court Erred By Deeming This Case Exceptional Solely On The Basis Of The Jury's Finding Of Liability For Contributory Infringement.

The district court applied an incorrect legal standard in deeming this case "exceptional" when it equated the grounds for finding the case "exceptional" with the same elements and findings required to find contributory trademark infringement in the first place. The district court first indicated that a finding of "willful and intentional infringement" is enough to render a case exceptional. JA856. The court then determined that the evidence was sufficient to permit it to "find that [von Drehle] willfully and intentionally engaged in contributory trademark infringement," pointing to testimony from Steven von Drehle indicating "that von Drehle's 810B towels were specifically designed to fit [GP's] enMotion dispenser and that he knew the 810B towels would be stuffed into [that] dispenser." JA855. The district court then concluded that attorney fees were warranted because "[a]s the jury in this matter has concluded that such action constitutes contributory trademark infringement, the Court finds that Defendant's infringement was willful and intentional." JA855-56.

Apart from the errors associated with the court's use of the "willful and intentional" standard in this context, *see infra* Part II.B-C, the court erred in basing its attorney fee standard on the same willful and intentional infringement standard, and the evidence supporting it, that are required to find a defendant liable for

contributory trademark infringement.  The plain meaning of the statutory term "exceptional" requires that attorney fees be awarded only in rare and unusual cases, not routinely for acts amounting to contributory infringement, and that an award of attorney fees under 15 U.S.C. § 1117(a), is reserved for circumstances that are "truly egregious."  *Badger Meter*, 13 F.3d at 1159; *see infra* Part II.B-C. The district court, however, did not base its fee award on any finding of extraordinary conduct.

To the contrary, the court premised its "exceptional case" holding on nothing more than the facts that established von Drehle's liability for contributory trademark infringement and that are required to produce any liability for contributory infringement.  There is nothing extraordinary or "exceptional" in a contributory infringement case about evidence indicating that a manufacturer knowingly produced and shipped a product for use by downstream merchants in a manner that a jury found to be infringing.  Such conduct is nothing more than what is required to establish liability in a contributory trademark infringement case in the first place.  *See Ga.-Pac. Consumer Prods.*, 618 F.3d at 450 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982)).  As the district court instructed the jury, a manufacturer is liable for contributory trademark infringement where that manufacturer "continue[s] to supply [a] merchant down the distribution chain knowing that it[s] [product] could readily be passed off to the

36

merchant as a misleading product." JA564-65; *see also* JA567. The district court, therefore, deemed this case exceptional based only on facts that established the basic elements of liability for contributory trademark infringement. The only "extraordinary" or "exceptional" aspect of this case is that the conduct giving rise to liability is widely practiced and accepted as legitimate within the industry and had specifically been found to be lawful by the federal courts that initially considered the matter. *See infra* Part II.C.

More than reliance on the facts and jury conclusions that establish liability is required to make a case "exceptional"; otherwise, the statute operates as a fee-shifting provision, which clearly is not what Congress intended. The legal standard the district court applied established only that the defendant was liable for contributory trademark infringement, not that the conduct was "exceptional" for purposes of 15 U.S.C. § 1117(a).

### B. The District Court Failed To Apply The Bad Faith Standard Required For Attorney Fee Awards Under The Lanham Act.

The district court also applied an erroneous legal standard by awarding attorney fees to GP without requiring GP to make the necessary showing that von Drehle acted in bad faith. *See*, *e.g.*, *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008) ("The prevailing party bears the burden of demonstrating the exceptional nature of the case by clear and convincing evidence."). That error, which resulted in an

improper fee award of more than $2.2 million, necessarily merits reversal. *See PETA*, 263 F.3d at 370; *see also Texas Pig Stands v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697-98 (5th Cir. 1992) (reversing an attorney fee award where the district court had improperly applied the legal standard).

The Lanham Act does not define precisely what constitutes an "exceptional case[]" meriting an award of attorney fees, but this Court has interpreted that requirement to mean "that for a prevailing plaintiff to succeed in a request for attorney fees," the plaintiff "must show that the defendant acted in *bad faith*." *Scotch Whiskey Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992) (emphasis added); *see also PETA*, 263 F.3d at 370. Anything less than a showing of bad faith by a prevailing plaintiff is insufficient to support an attorney fee award. *See Retail Servs., Inc.*, 364 F.3d at 550.[6] The bad faith standard has also been adopted by several other courts of appeals. *See, e.g.*, *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (attorney fees "should be awarded only 'on evidence of fraud or bad faith'"); *Texas Pig Stands*, 951 F.2d at 697 ("exceptional" under the Lanham Act requires "a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud"); *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982)

---

[6] The rigorous nature of the bad faith standard is confirmed by this Court's rule that a prevailing defendant can recover attorney fees upon a showing of "something less than bad faith," but a prevailing plaintiff must meet the higher bad faith standard. *See Scotch Whiskey Ass'n*, 958 F.2d at 599-600.

(an award of attorney fees "should be made only in exceptional circumstances and on evidence of fraud or bad faith").

This Court has specifically defined bad faith with reference to the Lanham Act's legislative history establishing that attorney fees for prevailing plaintiffs are contemplated only "for acts which courts have characterized as malicious, fraudulent, deliberate, and willful."  S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136.  This Court indicated that those four terms – "malicious, fraudulent, deliberate, and willful" – together describe the showing that a prevailing plaintiff must make to recover attorney fees under 15 U.S.C. § 1117(a). *See Scotch Whiskey Ass'n*, 958 F.2d at 599.  Other courts have adopted a similar definition, finding that the Act's legislative history establishes that a prevailing party must show extraordinary, malicious, wanton, oppressive, and even fraudulent conduct.  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043-44 (9th Cir. 1986); *see also PETA*, 263 F.3d at 370; *Texas Pig Stands*, 951 F.2d at 697; *Buzz Off Insect Shield*, 606 F. Supp. 2d at 590-91; *see generally Black's Law Dictionary* 159 (9th ed. 2009) (defining "bad faith" as "[d]ishonesty of belief or purpose"). This Court's definition of bad faith, along with the similar characterizations used by other courts, makes clear that under the bad faith standard, an award of attorney fees is reserved for "truly egregious" wrongdoing.  *Badger Meter*, 13 F.3d at 1159; *see also Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994) (per

curiam) ("Courts have defined the characteristics of exceptional cases with adjectives suggesting egregious conduct by a party.").

In deeming this case "exceptional," the district court did not mention, much less apply, the bad faith standard, and, consequently, did not assess whether GP had met its burden of showing evidence sufficient to satisfy that standard. Instead, the district court substituted a lesser standard – suggested by GP, *see* D. Ct. Dkt. No. 326, at 2, 10-11 – and held that its own finding of "willful and intentional infringement" was enough to satisfy the "exceptional case" requirement of the Lanham Act's attorney fee provision. JA856. As noted previously, that finding was based on testimony suggesting that "von Drehle's 810B towels were specifically designed to fit the enMotion dispenser and that [von Drehle's president] knew that 810B towels would be stuffed into plaintiff's enMotion dispenser," JA855, and on the jury's apparent rejection of von Drehle's argument that "its actions adhered to industry standards." JA856.

It cannot be argued that the standard applied by the district court somehow implicitly amounts to a "bad faith" determination, for several reasons. *First,* nothing in the court's order suggested that it was making a determination of "bad faith" or that the jury had been called upon to make a "bad faith" determination. *Second*, this Court's consideration of "willful" or "deliberate" conduct in connection with an award of attorney fees under the Lanham Act has always been

40

part of a broader "bad faith" analysis.  *See, e.g., Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 441 (4th Cir. 2011) (referencing "a finding of bad faith" in affirming an attorney fee award); *PETA*, 263 F.3d at 370; *Scotch Whiskey Ass'n*, 958 F.2d at 599.  This is again consistent with the fact that this Court derives its "bad faith" standard from the Senate Report on the Lanham Act, which explains that Congress only intended attorney fees for conduct that is "malicious, fraudulent, deliberate, *and* willful."  S. Rep. No. 93-1400, *reprinted in* 1974 U.S.C.C.A.N. at 7136 (emphasis added); *see Scotch Whiskey Ass'n*, 958 F.2d at 599.

*Third*, even if focusing on "willfulness" alone were appropriate, and it is not, the evidence cited by the district court in support of its finding of "willful and intentional infringement" is insufficient to establish bad faith as a matter of law. The district court cited testimony indicating only that von Drehle intentionally manufactured ten-inch towels that it knew would be stuffed into GP's enMotion® dispensers.  JA855-56.  The district court recognized that the jury ultimately found that conduct constitutes trademark infringement, JA855-56, but the court did *not* find that von Drehle willfully violated the law (and, as shown below, the evidence could not have supported such a finding).  This distinction is significant because "[w]illfulness in performing the [infringing] act . . . does not necessarily mean willfulness in violating the law," and it is "[w]illfulness in violating the law [that]

41

may qualify a case as exceptional" in conjunction with other indicators of bad faith. *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 381 (W.D.N.C. 1997); *see also, e.g.*, *Badger Meter*, 13 F.3d at 1159-60 (holding that "intentionally copying a competitor's product, even if this is later determined to involve . . . infringement" does not "by itself constitute 'willful' infringement"); *Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997).

Requiring proof of a willful violation of the law to establish that a case is "exceptional" under the Lanham Act also accords with the statute's language and purpose. If, as the district court held here, intentionally engaging in conduct that is later deemed infringing were enough to meet the "exceptional case" standard, the only conduct that would *not* qualify as "exceptional" would be conduct that is accidental or mistaken – which is clearly not what the statute contemplates. *See, e.g., In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 557, 562 (E.D. Va. 2010) ("It is also important to note that 'willfulness' means more than simply that the act of infringement was 'done voluntarily and intentionally and not because of accident or other innocent reason.'") (quoting *Texas Pig Stands*, 951 F.2d at 697). This is particularly true for contributory trademark infringement, where a manufacturer's knowledge of downstream conduct that is found to be infringing is not "exceptional," but the basic rule for liability. *See supra* Part II.A. By focusing

only on the "willfulness" of the underlying conduct and failing to evaluate the

willfulness of the violation – in addition to ignoring the rest of the bad faith

analysis – the district court based its award on erroneous legal principles and,

therefore, abused its discretion. *Texas Pig Stands*, 951 F.2d at 697-98; *see also*

*PETA*, 263 F.3d at 570.

### C.    Even If The District Court Had Conducted The Proper Analysis, The Record Contains No Evidence Of Bad Faith That Could Support An Attorney Fee Award.

The district court's failure to apply the required "bad faith" standard in

awarding GP more than $2.2 million in attorney fees necessitates reversal, and, in

any event, the record could not possibly support a finding of bad faith, much less a

finding that GP made such a showing by clear and convincing evidence. *See*, *e.g.*,

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 550 F.3d at 491. There

is no evidence that von Drehle willfully violated the law or that von Drehle acted

wantonly, maliciously, and fraudulently.  To the contrary, the only thing

"exceptional" about this case is that the widespread industry practice and earlier

federal court decisions indicated that the defendant's conduct was entirely

legitimate.

From the time GP initiated its wave of infringement actions against von

Drehle and its distributors, a series of federal courts rejected claims that the

conduct at issue – *i.e.*, the "stuffing" of GP's enMotion® dispensers with von

Drehle's unmarked towels – constituted trademark infringement.  Indeed, prior to the January 2012 jury verdict in this case, no court had ever determined that this conduct was unlawful.  As noted, a federal district court in Arkansas, following a bench trial in 2009 that involved virtually the same allegations and evidence as in this case, held that "the preponderance of the evidence shows no likelihood of confusion, no direct trademark infringement, and no contributory trademark infringement." *Myers*, 2009 WL 2192721, at *8.  The Eighth Circuit affirmed that decision in 2010, finding that there was no evidence of confusion among the end-user purchasers of the towels or bathroom customers.  621 F.3d at 773-77.  In 2011, a federal district court in Ohio determined that the results of the litigation in the Eighth Circuit precluded GP's claims against another of von Drehle's distributors, which again involved similar facts and allegations of contributory infringement.  *Four-U*, 821 F. Supp. at 948, 955.  The Sixth Circuit affirmed that decision.  701 F.3d at 1093, 1096.  Even the district court in this case initially granted summary judgment to von Drehle on GP's contributory infringement claims.  *See Ga.-Pac. Consumer Prods.*, 645 F. Supp. 2d at 536-37.  This Court reversed that determination in 2010, indicating that evidence of confusion among the users of restroom dispensers was sufficient to defeat a motion for summary judgment.

44

These decisions preclude any finding that von Drehle knowingly or willfully violated the law or acted maliciously by making and shipping unmarked towels for placement in GP's dispensers. To the contrary, von Drehle reasonably – and, as the decisions set forth above confirm, justifiably – believed that the conduct at issue in this case did not constitute infringement. *See* JA308-10, 499 (testimony from Steven von Drehle that, in light of industry practice, he did not believe "stuffing" a proprietary dispenser to violate any trademark laws). That the jury in this action ultimately disagreed with those other courts as to what constitutes evidence of confusion and contributory trademark infringement does not suggest that von Drehle willfully violated the law or otherwise behaved egregiously – especially as the time period of the relevant conduct was prior to that judgment, beginning in January 2005 through 2011. At most, the jury's verdict – and this Court's 2010 summary judgment decision – suggest that the legal question of infringement had been, during the relevant 2005-2011 period, a somewhat closer legal issue than prior decisions had indicated. Where there is a close legal question of whether there has been infringement at all, courts have understandably declined to find bad faith and deem a case "exceptional." *See, e.g., Martin's Herend Imps.*, 112 F.3d at 1305 ("[T]he law [in this area] is a difficult subject. . . . We can find no evidence in the record that [the defendant] knew at the time of its actions that it was violating the law. . . . Plaintiffs did not demonstrate the kind of highly culpable

conduct meriting an award of attorney fees."); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 49 (3d Cir. 1991) (same).[7]

Evidence in this and related cases of industry practice further precludes any finding of bad faith. It is undisputed that "it is common practice in the [bathroom towel] industry, and not improper, to put one brand of towels in an unleased, universal dispenser displaying a different manufacturer's trademarks." *Myers*, 621 F.3d at 773; *see* JA309-10, 380-83, 385-91, 499-504, 515. Indeed, GP itself has engaged in "stuffing," and its own product catalog advertises towels to replace those of other manufacturers, including von Drehle. *See* JA211-26, 385-91, 499-504. Although GP introduced a novel concept in the bathroom towel industry by requiring customers to lease its enMotion® dispensers as part of its strategy to bundle its dispensers with its own paper products, this change hardly put other manufacturers on notice that the placement of their towels in those dispensers constituted trademark infringement. *See*, *e.g.*, *Myers*, 621 F.3d at 777 ("Whether or not a towel dispenser is leased has no bearing on the actual confusion by the bathroom consumer; there is no evidence that bathroom consumers of towel dispensers know whether the dispenser they are using is leased on unleased."); *see*

---

[7] Courts have declined to find even recklessness, much less bad faith, in the context of a defendant's conduct undertaken in the midst of legal uncertainty or conflicting legal authority. *See*, *e.g.*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007); *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803-04 (7th Cir. 2010); *United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 983-84 (D.C. Cir. 2008).

46

*also* JA390-91, 481 (testimony from a GP vice president explaining that there is no way for a bathroom customer to tell whether a dispenser is leased).  Given that von Drehle's conduct was consistent with what has been recognized as a longstanding and legitimate industry practice, and any adverse trademark-related implications of GP's leasing program for that practice had not yet been established, von Drehle cannot be said to have acted maliciously and fraudulently, even if the jury ultimately did not decide this case in its favor.  *See* JA308-10, 499-504.

The nature of the claims in this case further confirms that this case is not "exceptional" and does not reflect bad faith.  It is far from a typical trademark infringement case in which attorney fees are awarded, *i.e.*, cases that "involve [a defendant's] deliberate attempts . . . to pass off its goods as those of the plaintiff by applying plaintiff's trademark to defendant's goods."  *Ferrero, U.S.A.*, 952 F.2d at 48-49; *see, e.g.*, *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 589 (W.D.N.C. 2010) (finding bad faith where the defendant intentionally changed its product and label to look like the plaintiff's).  There is no evidence that von Drehle attempted to fool end-user purchasers or bathroom consumers by imitating GP's mark.  von Drehle's towels were sold to end-user purchasers in packages that plainly bore von Drehle's marks, which look nothing like GP's marks.  JA376-77; *see also Myers*, 621 F.3d at 775 ("[T]he end-user [purchasers of von Drehle's towels] are fully aware of the brand of towel they stuff

47

into their dispensers, thus there is no actual confusion as to the source of the towel – a determination unchallenged by Georgia-Pacific.").

In addition, it is undisputed that von Drehle's towels that were dispensed to bathroom customers were unmarked, so there was no potential for confusion due to any deliberate or fraudulent similarity between trademarks. Here, where the jury's finding of confusion hinged on an indirect connection between a dispenser and "an unmarked complementary product," *Myers*, 2009 WL 2192721, at *7, there is none of the malicious, deliberate "palming off" that courts have found to justify attorney fees. The types of egregious behavior that this Court has previously identified in affirming attorney fee awards under the Lanham Act are simply not present here. *Cf. Newport News Holdings Corp.*, 650 F.3d at 441 (affirming a fee award where the defendant continued to use the plaintiff's mark in its web address after an arbitrating body had informed the plaintiff of defendant's rights in the mark); *Emp'rs Council on Flexible Comp. v. Feltman*, 384 F. App'x 201, 207-08 (4th Cir. 2010) (per curiam) (unpublished) (affirming a fee award where a disgruntled executive intentionally reserved his former employer's mark to prevent the company from renewing its expired corporate charter). That is, there is no basis for a conclusion that this is an "exceptional case" of trademark infringement undertaken in bad faith.

48

### III.  The District Court Abused Its Discretion By Awarding Prejudgment Interest Because This Court Has Never Held That Prejudgment Interest Is Available Under The Lanham Act And This Case Is Not "Exceptional."

The district court awarded GP $204,450 in prejudgment interest and cited in support of that award a Second Circuit case, *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990), indicating that "prejudgment interest [is] appropriate in exceptional case[s] under the Lanham Act." JA858. The district court provided no other basis for the interest award. This Court reviews the trial court's decision to award prejudgment interest for abuse of discretion. *See*, *e.g.*, *Am. Honda Motor Co.*, 918 F.2d at 1064.

The provision of the Lanham Act at issue here, 15 U.S.C. § 1117(a), does not expressly provide for prejudgment interest, and this Court has never held that prejudgment interest is available under that provision. Accordingly, the district court's interest award is not supported by any precedent from this circuit.

Even if prejudgment interest may be available under Section 1117(a) in exceptional cases, the district court abused its discretion in awarding prejudgment interest for the same reasons that it abused its discretion in awarding attorney fees. As set forth above, *see supra* Part II, this case is not "exceptional," and the district court's legally erroneous analysis pointed to nothing extraordinary about it. Furthermore, this Court has interpreted the Lanham Act's "exceptional case" language addressing attorney fees to require a prevailing party to make a showing

49

of "bad faith," *PETA*, 263 F.3d at 370; *see Scotch Whiskey Ass'n*, 958 F.2d at 599;

*supra* Part II.B, but the district court did not require or make any such showing,

and, in any event, the evidence precludes such a finding. *See supra* Part II.B-C.

Accordingly, the district court's conclusion that this case is "exceptional" is

unfounded, and this Court should reverse the district court's prejudgment interest

award.

## IV.    The District Court Abused Its Discretion By Awarding Injunctive Relief That Interferes With The Decisions Of Other Circuits.

The district court granted GP's motion for a permanent injunction, enjoined

von Drehle from "interfering directly or indirectly with [GP's] trademark rights,"

and stated that "any deliberate or purposeful placement of [von Drehle's] paper

towels in [GP's] enMotion dispensers shall constitute a violation of this permanent

injunction." JA854-55.  The injunction applied nationwide and contained no

geographical limitations.  This Court reviews the fashioning of a permanent

injunction for abuse of discretion.  *See Va. Soc'y for Human Life, Inc. v. FEC*, 263

F.3d 379, 392 (4th Cir. 2001).

"[A]n injunction should be carefully addressed to the circumstances of the

case," *id.* at 393, and "'should be tailored to restrain no more than what is

reasonably required to accomplish its ends,'" *Hayes v. N. State Law Enforcement

Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993).  "Although injunctive relief

should be designed to grant the full relief needed to remedy the injury to the

prevailing party, it should not go beyond the extent of the established violation." *Id. See also PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (courts of appeals "will vacate an injunction if it is 'broader in scope than that necessary to provide complete relief to the plaintiff'"). The district court's decision to grant an expansive, nationwide injunction clearly violates these basic principles determining the limits of an equitable remedy. The district court's injunction deems unlawful and provides GP with relief for conduct that has been found, in the Eighth Circuit, to be lawful and, in the Sixth Circuit, to be beyond GP's ability to redress.

These standards also require reversal of nationwide injunctions that are "broader than necessary" or "encroach[] upon the ability of other circuits" to consider the same legal question. *Va. Soc'y*, 263 F.3d at 393. This Court's decision in *Virginia Society for Human Life, Inc. v. Federal Election Commission* is particularly instructive because there, as here, multiple other federal courts had previously ruled on the same legal question. *Id.* at 385. At issue was whether the Federal Election Commission's ("FEC") interpretation of a statute was constitutional, and courts in at least two other circuits had held that the agency's interpretation was improper. *Id.* at 381. This Court likewise deemed the FEC's interpretation improper, holding that it violated the First Amendment. *Id.* at 390-92. This Court enjoined the application of the relevant regulation to the plaintiff in

that case, but rejected as an abuse of discretion a broad nationwide injunction that would have prohibited the FEC from applying the regulation to other entities beyond the Fourth Circuit. *Id.* at 392-94. This Court reasoned that such an injunction would improperly conflict with the basic principle of comity "that a federal court of appeals decision is only binding within its circuit," because a nationwide injunction "would in effect be imposing [the Fourth Circuit's] view of the law on all the other circuits" and would "thwart the development of important questions of law" in those circuits. *Id.* at 393-94. Here, the district court's injunction not only would undermine the prerogatives of courts of appeals that have yet to address the relevant legal issues (which *Virginia Society* directs is improper), but goes further and would undermine the decisions to the contrary of two courts of appeals.

Several other courts of appeals have similarly recognized that district courts should not, due to principles of comity and the structure of the federal judiciary, issue nationwide injunctions that conflict with the decisions of other circuits. For example, the Ninth Circuit held that a district court abused its discretion in issuing a nationwide injunction when other circuits had reached different conclusions on the same legal question. *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 770-73 (9th Cir. 2008). The court reasoned that "when exercising its equitable powers to issue an injunction, a court must be mindful of any effect its decision might have

outside its jurisdiction" and "ordinarily should not award injunctive relief that would cause substantial interference with another court's sovereignty." *Id.* at 770; *see also id.* at 772 (citing *Virginia Society* as an example of mindfulness of other courts); *see also id.* at 773 (prohibiting "relief that would cause substantial interference with the established judicial pronouncements of . . . sister circuits" because injunctions that interfere with other circuits' sovereignty undermine "[p]rinciples of comity" and "encourage forum shopping").

Likewise, the Sixth Circuit held that a nationwide injunction was too broad because it sought to apply intellectual property rights, not recognized in New York, within that jurisdiction. *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 326-27 (6th Cir. 2001). The Sixth Circuit found that this would be "unjust," because "New York and other states . . . have explicitly refused to recognize" such rights. *Id.* at 327. Furthermore, the Sixth Circuit reasoned that "'prohibiting otherwise lawful conduct in another state raises serious concerns.'" *Id.* (emphasis omitted)

The injunction entered by the district court contravenes *Virginia Society* and is inconsistent with the same principles of comity recognized by other circuits. The district court's injunction is not limited to von Drehle's conduct within this circuit – but instead applies categorically to "*any* . . . placement" of 810-B towels, JA855 (emphasis added). The injunction also forbids von Drehle from "interfering

53

*directly or indirectly* with plaintiff's trademark rights," JA855 (emphasis added),

without limiting that prohibition geographically or otherwise explaining what

constitutes "indirect" interference. The injunction applies to von Drehle's sales to

distributors throughout the country, including within the Sixth and Eighth Circuits,

since those distributors can still "place" 810-B towels in GP dispensers or might

"indirectly" commit what the district court considers to be contributory trademark

infringement.

By providing relief directed against the placement of 810-B towels in GP's

dispensers in circuits other than the Fourth Circuit, and especially by doing so for

conduct in the Sixth and Eighth Circuits, the district court's injunction is

impermissible under *Virginia Society*. Courts in circuits other than the Fourth,

Sixth, and Eighth have not yet considered legal arguments that distributors or

others might assert against GP's efforts to bundle its dispensers and paper

products, nor have they addressed the preclusive effect of the judgments against

GP in the Sixth and Eighth Circuits that might foreclose the relief that the district

court's injunction now indirectly provides to GP against those distributors. The

Sixth and Eighth Circuits have rejected GP's claim that the same business practice

at issue in this case is unlawful. Both circuits addressed the same course of

conduct at issue here and the same core factual allegations and refused to find

liability for contributory trademark infringement. To uphold the district court's

injunction, which provides GP with relief over conduct found to be lawful or beyond GP's ability to secure relief, "would in effect be imposing [this Court's] view of the law on all the other circuits." *Va. Soc'y*, 263 F.3d at 394. Under well-settled principles of comity, such a result would be "unjust" and "raise[] serious concerns," *Herman Miller*, 270 F.3d at 327 (citations and emphasis omitted), including "creat[ing] tension between circuits and . . . encourag[ing] forum shopping," *AMC Entm't*, 549 F.3d at 773.

These principles apply to the reach of the injunction beyond the Fourth Circuit altogether. *Virginia Society* recognized that "a federal court of appeals' decision is only binding within its circuit" in part because "[a] contrary policy would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." 263 F.3d at 393 (internal quotations omitted); *see also AMC Entm't*, 549 F.3d at 771 ("[W]e must be mindful of the decisions of our sister circuits when we make decisions in cases affecting litigants' legal rights and remedies in the geographic boundaries of their circuits."). By precluding distributors in those other circuits from placing generic towels in GP's dispensers before courts in those circuits determine whether such placement is unlawful, or whether GP's losses in the Sixth and Eighth Circuits preclude it from securing relief there, the court's injunction in this case violates this Court's precedent and basic principles of comity.

Extending the injunction in this case beyond the Fourth Circuit also violates the principles of comity articulated by this Court in *Virginia Society* in light of the indirect effect that the injunction will likely have on entities that are not parties to this suit and operate beyond the boundaries of the Fourth Circuit, *see Va. Soc'y*, 263 F.3d at 393-94, including by imposing on von Drehle certain obligations to address the activities of those parties.  By forbidding "any" placement of 810-B towels in GP's dispensers and even "indirect[]" interference with GP's asserted rights, JA855, the injunction has the potential to intrude very significantly on the practices of distributors and other parties beyond this circuit.  Whatever the merits of imposing such requirements within this circuit, the district court abused its discretion by imposing them elsewhere.

## CONCLUSION

For the foregoing reasons, the awards of attorney fees, treble damages, and prejudgment interest should be reversed.  The injunction should be limited so as not to extend beyond the boundaries of this circuit.

## REQUEST FOR ORAL ARGUMENT

von Drehle respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a).  This case presents important issues concerning the standards for awarding remedies under federal trademark law, and oral argument is likely to assist the Court.

Dated: November 21, 2013            Respectfully submitted,

Michael P. Thomas                    s/ Carter G. Phillips
PATRICK HARPER                   Carter G. Phillips
& DIXON, LLP                       *Counsel of Record*
P.O. Box 218                       Richard Klingler
Hickory, NC 28603                  Jacqueline G. Cooper
(828) 322-7741                     Nicolas W. Thompson
                                   John Paul Schnapper-Casteras
                                   SIDLEY AUSTIN LLP
                                   1501 K Street, NW
                                   Washington, DC 20005
                                   Telephone: (202) 736-8000
                                   Facsimile: (202) 736-8711

      *Counsel for Appellant von Drehle Corporation*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This brief of the Appellant has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2.     EXCLUSIVE of the table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service, this brief is no longer than 13,620 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief.


November 21, 2013                              /s/ Carter G. Phillips
Date                                                     Carter G. Phillips

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2013, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Miguel A. Estrada
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW, Suite 900
Washington, DC 20036
(202) 955-8257

Stephen P. Demm
John Gary Maynard, III
HUNTON & WILLIAMS, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8331

W. Kyle Carpenter
WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER
900 South Gay Street
Knoxville, TN 37901
(865) 215-1000

*Counsel for Appellee*

s/ Carter G. Phillips
Carter G. Phillips

59