No. 13-2003

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

GEORGIA-PACIFIC CONSUMER PRODUCTS LP,

*Plaintiff-Appellee,*

v.

VON DREHLE CORP.,

*Defendant-Appellant.*

On Appeal From The United States District Court For The
Eastern District Of North Carolina

**RESPONSE BRIEF FOR APPELLEE
GEORGIA-PACIFIC CONSUMER PRODUCTS LP**

Stephen P. Demm
John Gary Maynard, III
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
(804) 788-8331

Miguel A. Estrada
 *Counsel of Record*
Jonathan C. Bond
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mestrada@gibsondunn.com

W. Kyle Carpenter
WOOLF, MCCLANE, BRIGHT,
 ALLEN & CARPENTER, PLLC
900 South Gay Street
P.O. Box 900
Knoxville, TN 37901-0999
(865) 215-1000

*Counsel for Appellee Georgia-Pacific Consumer Products LP*

# DISCLOSURE OF CORPORATE AFFILIATIONS AND
# OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is not required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 13-2003  Caption: <u>Georgia-Pacific Consumer Products LP v. von Drehle Corp.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Georgia-Pacific Consumer Products LP
(name of party/amicus)

who is    appellee           , makes the following disclosure:
         (appellant/appellee/amicus)

**1.  Is party/amicus a publicly held corporation or other**          ☐ **YES** ☑ **NO**
     **publicly held entity?**


**2.  Does party/amicus have any parent corporations?**          ☑ **YES** ☐ **NO**

     **If yes, identify all parent corporations, including grandparent and great-grandparent corporations:**

     Georgia-Pacific Consumer Products LP has no immediate parent corporation. The ultimate, indirect parent of Georgia-Pacific Consumer Products LP is Koch Industries, Inc.

i

3. **Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?**  ☐ **YES** ☑ **NO**

   **If yes, identify all such owners:**

   n/a

4. **Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?**  ☐ **YES** ☑ **NO**

   **If yes, identify entity and nature of interest:**

   n/a

5. **Is party a trade association? (amici curiae do not complete this question)**  ☐ **YES** ☑ **NO**

   **If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:**

   n/a

6. **Does this case arise out of a bankruptcy proceeding?**  ☐ **YES** ☑ **NO**
   **If yes, identify any trustee and the members of any creditors' committee:**

   n/a

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS AND
OTHER INTERESTS ...................................................................... i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ................................................................ vi

INTRODUCTION ................................................................................. 1

STATEMENT OF ISSUES ................................................................... 4

STATEMENT OF FACTS .................................................................... 5

    A.    Georgia-Pacific's enMotion® Product Line ........................... 5

    B.    von Drehle Develops And Markets Its Infringing Towel ...... 8

    C.    Georgia-Pacific's Lawsuits To Protect Its Trademarks ........ 11

    D.    von Drehle Waives Its Preclusion Arguments In The First
Appeal .................................................................................... 13

    E.    von Drehle Attempts To Circumvent This Court's Ruling ... 14

    F.    The Jury Finds von Drehle Infringed Georgia-Pacific's
Trademarks ............................................................................ 15

    G.    This Court Rejects von Drehle's Attempt To Evade The Verdict
Based On Its Waived Preclusion Defenses ........................... 16

    H.    The District Court Enjoins von Drehle's Continued
Infringement And Awards Monetary Relief .......................... 18

SUMMARY OF ARGUMENT ............................................................ 21

STANDARD OF REVIEW .................................................................. 23

iii

**TABLE OF CONTENTS**
**(continued)**

Page

ARGUMENT ............................................................................................23

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ENJOINING VON DREHLE'S ADJUDICATED INFRINGEMENT NATIONWIDE ........................23

    A.    A Nationwide Injunction Is Appropriate To Protect Georgia-Pacific's Nationwide Rights From Nationwide Infringement ...........24

    B.    There Is No Basis Or Need To Narrow The Injunction To Avoid Purported Interference With Other Courts' Rulings ...............26

        1.    von Drehle Waived Any Claim That Other Courts' Rulings Justify Its Continued Infringement .............................26

        2.    The Injunction Does Not Interfere With Any Other Ruling ................................................................................28

        3.    The Injunction Should Not Be Limited To This Circuit ..........32

II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING TREBLE DAMAGES, ATTORNEY'S FEES, AND PREJUDGMENT INTEREST TO COMPENSATE GEORGIA-PACIFIC FOR THE FULL COSTS OF VON DREHLE'S DELIBERATE INFRINGEMENT ...........................................................33

    A.    The District Court Did Not Abuse Its Discretion By Awarding Treble Damages For von Drehle's Willful Infringement ...................34

        1.    The District Court Had Broad Discretion To Award Treble Damages Based On Its Finding Of Willful Infringement ................................................................................35

        2.    von Drehle's Attacks On The District Court's Treble-Damages Award Are Meritless .................................................38

            a.    The Lanham Act Authorizes Trebling Awards Based On The Defendant's Profits ..................................38

**TABLE OF CONTENTS**
**(continued)**

Page

b. The Lanham Act Did Not Require The Court To Find That Treble Damages Were Necessary To Compensate Georgia-Pacific ..........................................41

c. The District Court's Finding Of Willful Infringement Is Sufficient To Support Treble Damages ........................................................................45

B. The District Court Did Not Abuse Its Discretion By Awarding Attorney's Fees.................................................................55

C. The District Court Did Not Abuse Its Discretion By Awarding Prejudgment Interest.........................................................60

CONCLUSION ....................................................................63

STATEMENT REGARDING ORAL ARGUMENT ...........................................63

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*,
918 F.2d 1060 (2d Cir. 1990)................................................................61

*Armand's Subway, Inc. v. Doctor's Assocs., Inc.*,
604 F.2d 849 (4th Cir. 1979)...............................................................25

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
619 F.3d 301 (4th Cir. 2010)...............................................................28

*Eastman Kodak Co. v. S. Photo Materials Co.*,
273 U.S. 359 (1927) ............................................................................36

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ............................................................................19

*Employers Council on Flexible Compensation v. Feltman*,
384 F. App'x 201 (4th Cir. 2010) ........................................................51

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ............................................................................60

*Fox v. Fox*,
167 F.3d 880 (4th Cir. 1999).........................................................62, 63

*G. ex rel. Ssgt RG v. Ft. Bragg Dependent Schs.*,
343 F.3d 295 (4th Cir. 2003)...............................................................23

*Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*,
821 F. Supp. 2d 948 (N.D. Ohio 2011).....................................12, 15, 49

*Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*,
701 F.3d 1093 (6th Cir. 2012)..................................................12, 28, 49

*Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*,
2009 WL 2192721 (W.D. Ark. July 23, 2009) ............................12, 49

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*,
  621 F.3d 771 (8th Cir. 2010) ........................................ 12, 14, 15, 28, 49

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
  874 F.2d 431 (7th Cir. 1989) ................................................................ 46

*Hayes v. N. State Law Enforcement Officers Ass'n*,
  10 F.3d 207 (4th Cir. 1993) ................................................................. 25

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
  270 F.3d 298 (6th Cir. 2001) .................................................... 31, 32, 33

*Hudson v. United States*,
  522 U.S. 93 (1997) ............................................................................. 43

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
  451 U.S. 557 (1981) ........................................................................... 37

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ...................................................................... 43, 44

*La Quinta Corp. v. Heartland Props. LLC*,
  603 F.3d 327 (6th Cir. 2010) ............................................................... 46

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ........................................................................... 43

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at
  Lansdowne, LLC*,
  713 F.3d 187 (4th Cir. 2013) ............................................................... 40

*Larsen v. Terk Techs. Corp.*,
  151 F.3d 140 (4th Cir. 1998) ......................................................... 35, 47

*Maksymchuk v. Frank*,
  987 F.2d 1072 (4th Cir. 1993) ............................................................. 61

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
   650 F.3d 423 (4th Cir. 2011)....................................................... 20, 23

*PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011)...............................................................19

*People for Ethical Treatment of Animals v. Doughney*,
   263 F.3d 359 (4th Cir. 2001)................................................. 21, 58, 59

*Quesinberry v. Life Ins. Co. of N. Am.*,
   987 F.2d 1017 (4th Cir. 1993)................................................... 61, 62

*Retail Servs. Inc. v. Freebies Publ'g*,
   364 F.3d 535 (4th Cir. 2004)................................................. 57, 58, 60

*Ridge v. Cessna Aircraft Co.*,
   117 F.3d 126 (4th Cir. 1997)...............................................................46

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
   978 F.2d 947 (7th Cir. 1992)..................................................... 61, 63

*Scotch Whisky Ass'n v. Majestic Distilling Co.*,
   958 F.2d 594 (4th Cir. 1992)................................................. 21, 59, 60

*Sloas v. CSX Transp. Inc.*,
   616 F.3d 380 (4th Cir. 2010)...............................................................55

*Slupinski v. First Unum Life Ins. Co.*,
   554 F.3d 38 (2d Cir. 2009)......................................................... 62, 63

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
   282 U.S. 555 (1931) ...........................................................................37

*Synergistic Int'l, LLC v. Korman*,
   470 F.3d 162 (4th Cir. 2006).................................... 23, 35, 41, 45, 50, 52, 54, 55

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991)................................................... 37, 46

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*The Real Truth About Abortion, Inc. v. FEC*,
  681 F.3d 544 (4th Cir. 2012) ................................................................23

*Thompson v. Haynes*,
  305 F.3d 1369 (Fed. Cir. 2002) .................................................... 40, 41

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
  205 F.3d 1219 (10th Cir. 2000) ...........................................................61

*United States v. AMC Entm't, Inc.*,
  549 F.3d 760 (9th Cir. 2008) ...............................................................31

*United States v. Bowles*,
  602 F.3d 581 (4th Cir. 2010) ...............................................................24

*United States v. Halper*,
  490 U.S. 435 (1989) ............................................................................43

*Va. Soc'y for Human Life, Inc. v. FEC*,
  263 F.3d 379 (4th Cir. 2001) ........................................... 23, 25, 30, 31

*Vector Prods., Inc. v. Hartford Fire Ins. Co.*,
  397 F.3d 1316 (11th Cir. 2005) ...........................................................46

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ............................................................................43

## Statutes

15 U.S.C. § 1111 .................................................................................25

15 U.S.C. § 1114 .................................................................................11

15 U.S.C. § 1116 .................................................................................24

15 U.S.C. § 1117 ........................................ 4, 11, 35, 36, 37, 40, 42, 45, 46, 47, 56

# TABLE OF AUTHORITIES
## (continued)

Page(s)

15 U.S.C. § 1125 ..................................................................................... 11, 25

**Rules**

Fed. R. Civ. P. 65 ....................................................................................29

**Other Authorities**

Ralph S. Brown, *Civil Remedies for Intellectual Property Invasions:*
  *Themes and Variations,*
  55 Law & Contemp. Probs. 45 (1992) ................................... 42, 43, 44

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*
  *Competition* (4th ed. update 2013)................................. 24, 35, 40, 42

S. Rep. No. 93-1400 (1974),
  *reprinted in* 1974 U.S.C.C.A.N. 7132................................. 54, 56, 58

# INTRODUCTION

More than eight years after bringing this suit to end Appellant von Drehle Corp.'s deliberate, now-adjudicated trademark infringement in 2005, Appellee Georgia-Pacific Consumer Products LP ("Georgia-Pacific") finally received the protection that federal law promised:  an injunction barring further infringement by von Drehle, and monetary relief to make Georgia-Pacific whole.  Securing that relief entailed a trial and two prior appeals, in which the jury and this Court rejected each of von Drehle's spurious excuses for prolonging its profitable infringement.  Neither the jury nor this Court was swayed by von Drehle's constant refrain that selling its knock-off towels for unauthorized use in Georgia-Pacific's trademarked enMotion® dispensers is legitimate in light of supposed industry practice.  After the jury found von Drehle's conduct unlawful, this Court barred von Drehle from circumventing the verdict based on arguments that decisions from *other* courts validated its conduct—arguments von Drehle had waived.  JA659.

Despite a final ruling that its conduct is unlawful, von Drehle strenuously opposed any injunction forbidding further infringement, seeking to preserve its profitable practice as long as possible.  But, after additional briefing and a hearing, the district court issued a nationwide injunction.  JA853-55.  Based on this Court's rulings, the jury's verdict, and its own finding that von Drehle's infringement "was willful and intentional," JA856—and exercising its broad discretion under the

Lanham Act, 15 U.S.C. § 1117(a)—the district court also awarded treble damages, attorney's fees, and prejudgment interest.

In a complete reversal of its strategy below, where von Drehle framed the central issue as whether any injunction was warranted, it abandons any categorical attack on injunctive relief on appeal. It buries its only challenge to the injunction—the heart of the parties' dispute from day one—at the end of its brief, where it assails only the injunction's territorial reach. Instead, von Drehle now portrays the case as a fight over the monetary relief that the district court, in its discretion, determined was appropriate.

Although the legal claims that von Drehle proffers in this appeal are new, the substance of its arguments is not. In this third full-blown appeal to this Court, as at every previous stage of this litigation, von Drehle's answer to every legal question lies in its belief that "stuffing" is widely practiced, causes no relevant confusion, and is therefore legitimate. von Drehle hides behind that purported practice, arguing that it proves that von Drehle did not act willfully or in bad faith and therefore cannot owe treble damages, attorney's fees, or prejudgment interest. von Drehle asserts that the injunction cannot be nationwide for the same reason, relying on other decisions—the same rulings it invoked previously under the banner of preclusion—that supposedly approved its infringement. All of those arguments have been rejected by this Court, by the jury, or both. Thus, despite

2

purporting to accept this Court's prior rulings and the verdict, Br. 3, in reality von Drehle challenges them head-on.

von Drehle's attempts to overturn the district court's carefully crafted remedial order should be rejected for that reason alone. But even considered anew, each of its arguments is baseless. The district court considered but rightly rejected von Drehle's assertion that injunctive relief should be confined to this Circuit. The injunction it awarded was properly tailored to Georgia-Pacific's trademark rights and von Drehle's infringement, both of which are nationwide. None of the rulings in the other cases that von Drehle invokes, in which von Drehle was not a party, entitles von Drehle to engage in conduct that the jury here conclusively found unlawful.

The monetary relief the district court awarded was likewise perfectly appropriate under the circumstances, and well within the court's wide discretion. von Drehle's infringement, which the district court found was willful, not only stole sales from Georgia-Pacific, but tarnished its brand image and the goodwill Georgia-Pacific had built. And vindicating its federally guaranteed rights took years, forcing Georgia-Pacific to spend significant resources that could have been devoted to new innovations. von Drehle nevertheless claims that treble damages, attorney's fees, and prejudgment interest are foreclosed under a novel, convoluted theory of trademark-infringement remedies. But that theory, in large part never

presented (much less developed) in the district court, has no basis in the Lanham Act or controlling case law. von Drehle's case boils down to disagreement with the district court's weighing of the evidence proving von Drehle's bad faith and with the court's exercises of discretion. None of its claims provides any basis to overturn the court's order.

Federal law, this Court's prior rulings, and the jury's and district court's factual findings all amply support the district court's measured remedial order preventing further infringement and making Georgia-Pacific whole. That order should be affirmed, and von Drehle's illegal exploitation repudiated once and for all.

## STATEMENT OF ISSUES

1. Did the district court properly enter a nationwide injunction to prevent von Drehle from continuing to engage in its adjudicated trademark infringement?

2. Did the district court properly exercise its discretion by awarding treble damages, based on the court's express finding that von Drehle's "infringement was willful and intentional" (JA856)?

3. Did the district court properly exercise its discretion by awarding attorney's fees based on its finding that this case is "exceptional" under 15 U.S.C. § 1117(a), in light of von Drehle's "willful and intentional" infringement (JA856)?

4.      Did the district court properly exercise its discretion by awarding

prejudgment interest?

## STATEMENT OF FACTS

### A.      Georgia-Pacific's enMotion® Product Line

Georgia-Pacific markets paper towels and dispensers for the "away-from-

home" market—*i.e.*, public venues such as hotel and restaurant restrooms.  JA139.

This case involves Georgia-Pacific's enMotion® paper-towel dispensing system, an

innovative product line developed after years of research and tens of millions of

dollars of investment, JA472, to meet a critical market need:  Conventional paper-

towel dispensers pose serious risks of cross-contamination—as multiple users

physically touch the same surfaces—and can yield enormous paper-towel waste.

JA323-24.

enMotion® provided a solution.  The original enMotion® system consists of

an electronic, hands-free dispenser, equipped with a sophisticated motion sensor,

that automatically provides a pre-measured length of a high-quality towel

specifically designed to ensure smooth operation and to provide a fabric-like feel.

JA141-42.  When first introduced in 2002, the enMotion® system was unique.  *Id.*

In the decade since, it has been an unqualified success.  enMotion® provides

reliability and hygienic, efficiency, and environmental benefits that most

competing systems cannot match.  JA326-32.  Building on that success, Georgia-

Pacific has expanded the enMotion® line to include more than a dozen dispensers specially tailored for particular industries and settings, as well as soap and hand-sanitizer systems.  JA346-47, 468.



**Photograph of enMotion® Dispenser (JA49)**

To safeguard its substantial investment, Georgia-Pacific obtained trademark protection for the enMotion® brand. Each dispenser and every box of paper-towel rolls bears several federally registered enMotion® and Georgia-Pacific trademarks. JA140, 142; *see also* JA172-73, 454-55. Those trademarks would be worthless if the enMotion® system were misused: The system's success depends on the *combination* of the dispenser's technology with the high-quality paper that Georgia-Pacific specifically developed for enMotion®. JA328. If refilled with the wrong paper, the system may not deliver the long-term reliability it was painstakingly engineered to achieve, and users would think poorly of enMotion®. JA325-29, 353.

Georgia-Pacific thus took several additional steps to ensure that consumers experience the enMotion® system's benefits, and to prevent the tarnishing and dilution of its brand. It designed the enMotion® system with a then-unique towel width (10 inches) and core size. JA341-42. And, instead of selling its dispensers, Georgia-Pacific leases them, conditioning the lease on the use of *only* authentic enMotion® paper. JA51, 333-34, 338-40. That requirement is reiterated on a sticker affixed inside each unit. JA49.02-49.05, 337. If the lessee (or sub-lessee) prefers not to use genuine enMotion® towels, it can simply return the dispenser without penalty. JA334.

## B.     von Drehle Develops And Markets Its Infringing Towel

von Drehle is a competing manufacturer of paper-towel products for the nationwide away-from-home market.  JA144.  By July 2004, von Drehle knew of Georgia-Pacific's enMotion® product line.  *Id*.  Seeking to free-ride on Georgia-Pacific's successful but costly innovation, it obtained an enMotion® dispenser and designed a cheap substitute towel for use in place of authentic enMotion® towels, JA286—a practice called "stuffing," JA145 n.3.  The towel von Drehle developed, the "810-B," was admittedly tailor-made for that purpose.  JA54, 286-87, 459.  When first introduced, the 810-B *could not* be used in any other dispenser; only enMotion® could accommodate its 10-inch width.  JA145, 459.

In 2004, after distributing sample 810-B rolls to customers to solicit feedback, JA52, 458, von Drehle began actively marketing the 810-B specifically for stuffing in enMotion® units, JA145, 462.  It referred to the 810-B as "the enMotion towel," JA52, 55, 56, 145, 288-89, and concededly knew for years that *every roll* sold would be stuffed in an enMotion® dispenser.  JA516, 831, 837, 860.

As internal emails reveal, von Drehle also knew from day one that its stuffing campaign would "caus[e] … headaches" for Georgia-Pacific, JA56, and soon began receiving complaints about the 810-B's quality.  JA57, 296-97.  Rolls installed in enMotion® dispensers sometimes would not stay in place, JA292-93, and von Drehle's paper was less absorbent and not as soft, JA293-94, 351-52.

8

Those problems threatened the reputation for quality that Georgia-Pacific had carefully cultivated for the enMotion® system.  JA352-53, 411, 429, 472-73.  von Drehle's chairman admitted that stuffing lower-quality towels into the enMotion® dispenser would adversely affect customer perceptions of enMotion®.  JA456.

When Georgia-Pacific learned of von Drehle's stuffing campaign, it immediately sent a cease-and-desist letter, reminding von Drehle that selling unauthorized, lower-quality towels as a cheap substitute for authentic enMotion® towels infringed Georgia-Pacific's trademarks.  JA58-59, 301-03.  von Drehle defiantly refused to end its profitable infringement, claiming that its "stuffing" was widely accepted and lawful.  JA60-61, 301-03.

von Drehle further claimed that its sales of the 810-B were legitimate because enMotion® was "no longer" the "only dispenser available on the market that" could accommodate the 810-B towel.  JA60.  von Drehle had begun to "offe[r] a 10-inch hard wound roll towel dispenser" of its *own*, it asserted, "to be used with" its 810-B.  *Id.*  But that "dispenser," dubbed the "28810," *id.*, was merely a metal pipe bolted to a crude, makeshift wood base.  JA304.  The prototype was assembled by an employee's father who simply "went to Home Depot and got some parts and took this pipe and put it on a wooden stand and called it a dispenser."  *Id.*  But words alone cannot do the "28810" justice:

9



**Photograph of von Drehle "28810" (JA50)**

Not surprisingly, the "28810" was not a best-seller.  The company never sold a single unit—nor even gave one away.  JA287; *see also* JA456.  Indeed, its president admitted at trial that the "28810" is not in use *anywhere*.  JA287.  Yet von Drehle stood behind it as an excuse to continue marketing its knock-off towel for use in enMotion® dispensers.  JA60.

### C.  Georgia-Pacific's Lawsuits To Protect Its Trademarks

Faced with von Drehle's refusal to cease its infringement, Georgia-Pacific filed this lawsuit in the Eastern District of North Carolina in July 2005, seeking to stop the infringement at the source.  JA62.  Georgia-Pacific's complaint alleged contributory trademark infringement, unfair competition, and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114(1), 1117(b), 1125(a).  JA83-87.  Georgia-Pacific sought an injunction barring von Drehle from infringing Georgia-Pacific's trademarks by, *inter alia*, marketing its towels for stuffing in enMotion® dispensers, as well as damages and other relief.  JA95-97.[1]

The suit proceeded slowly.  After nearly two years of litigation, the parties filed cross-motions for summary judgment, which the district court initially denied in March 2008.  D.E.155.  More than a year later, however, the court held another hearing, announced it was reconsidering its ruling, and indicated that it would issue a new decision soon.  D.E.194 at 77; JA648.

Meanwhile, beginning in 2008—more than three years after bringing this suit—faced with delay that foreclosed any prospect of prompt relief, and thus possible claims of trademark abandonment, Georgia-Pacific sued several distributors that sold von Drehle's 810-B towels for use in enMotion® dispensers.

---

[1]  Georgia-Pacific also alleged state-law claims, and von Drehle asserted unfair-competition counterclaims, none of which is at issue in this appeal.  JA87-95, 140.

As relevant here, Georgia-Pacific sued Myers Supply, Inc. ("Myers") in the Western District of Arkansas, *Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 2009 WL 2192721 (W.D. Ark. July 23, 2009), *aff'd*, 621 F.3d 771 (8th Cir. 2010), and sued Four-U-Packaging, Inc. ("Four-U") in the Northern District of Ohio, *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 821 F. Supp. 2d 948 (N.D. Ohio 2011), *aff'd*, 701 F.3d 1093 (6th Cir. 2012).[2] von Drehle was *not* a party to any of these other suits.[3]

The court in *Myers* granted summary judgment against certain of Georgia-Pacific's claims, and after a bench trial, entered judgment for Myers in July 2009. *Myers*, 2009 WL 2192721, at *1, *8-9. Discounting empirical evidence that stuffing von Drehle's towels in enMotion® dispensers causes significant consumer confusion, the *Myers* court relied on anecdotal testimony that stuffing (*non-proprietary*) dispensers was common industry practice. *Id.* at *6-8. The court also

---

[2]  Georgia-Pacific also sued a Tennessee distributor in 2008 and distributors in Nevada and Ohio in 2009, but Georgia-Pacific has settled or moved voluntarily to dismiss each of those suits, and none is relevant here. *See Georgia-Pacific Consumer Prods. LP v. Inland Supply Co.*, No. 09-246 (D. Nev. Sept. 25, 2013) (D.E.48); *Georgia-Pacific Consumer Prods. LP v. Superior Janitor Supply, Inc.*, No. 09-323 (S.D. Ohio Apr. 1, 2013) (D.E.73); *Georgia-Pacific Consumer Prods. LP v. A&W Office Supply, Inc.*, No. 08-204 (E.D. Tenn. July 22, 2008) (D.E.8).

[3]  von Drehle's assertion that after filing *this* lawsuit, Georgia-Pacific "also filed nearly identical trademark infringement suits in four *other* district courts against *von Drehle and* distributors of von Drehle's products" (Br. 5 (emphases added)) is false. Georgia-Pacific has sued von Drehle only once regarding infringement of its enMotion® trademarks—in this case.

stressed its view that end-user purchasers of paper-towel products were "more important" in assessing likelihood of confusion than patrons who actually use enMotion® dispensers in purchasers' restrooms. *Id.* at *6.

### D.    von Drehle Waives Its Preclusion Arguments In The First Appeal

Although von Drehle was not a party to *Myers*, it was well-aware of the *Myers* ruling. JA656. Two of its counsel attended the *Myers* trial, JA180, and one of them, who was also counsel in *Four-U*, raised a preclusion defense in *Four-U* based on the *Myers* ruling only 11 days after its issuance.[4] von Drehle, however, chose *not* to raise any preclusion defense in *this* case. When *Myers* was decided, the district court here was reconsidering its summary-judgment ruling. *See* D.E.194. Yet von Drehle did not assert that preclusion barred Georgia-Pacific's claims. And, when the district court ruled for von Drehle, von Drehle also raised no preclusion arguments based on *Myers* in *this* Court, as an alternative basis to affirm the district court's ruling. JA656. Instead, it invited this Court, like the district court, to decide the merits.

This Court did so, and overturned the district court's summary-judgment decision in an August 2010 published opinion. JA141. The Court rejected the district court's legal conclusion—which von Drehle defended—that only confusion

---

[4] Am. Answer 6-8 & Ex. A, *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 821 F. Supp. 2d 948 (N.D. Ohio 2011) (No. 09-1071) (D.E.10).

13

among those who *purchased* 810-B towels is relevant. JA153-55. Instead, this

Court held that post-purchase "confusion among the non-purchasing public" *is*

relevant if it "'will adversely affect the plaintiff's ability to control [its]

reputation.'" JA153-54 (citation omitted). It further held that the evidence of

contributory trademark infringement—including powerful empirical proof of

consumer confusion in the form of national consumer surveys—was sufficient for

a jury to find von Drehle liable. JA156-57. The Court was not swayed by von

Drehle's argument that stuffing is common in the industry. Appellee Br. 3-5, 32-

34, No. 09-1942 (4th Cir. Dec. 14, 2009) (D.E.37). It accordingly vacated the

summary-judgment ruling against Georgia-Pacific and remanded for trial. JA162.

von Drehle sought rehearing—again contending that only confusion among

purchasers matters and that stuffing is common industry practice, Pet. for Reh'g 3-

5, 10-12, No. 09-1942 (4th Cir. Aug. 24, 2010) (D.E.63)—which was denied.

JA164-65.

### E.    von Drehle Attempts To Circumvent This Court's Ruling

In November 2010—months after this Court's ruling, and more than 480

days after the *Myers* judgment—von Drehle sought for the first time to raise

preclusion defenses in this case based on the since-affirmed *Myers* judgment.

JA179-80, 650; *Myers*, 621 F.3d 771. The district court held that von Drehle could

not raise such defenses given its unjustified delay in asserting them and the

prejudice that allowing them would cause to Georgia-Pacific.  JA180.  von Drehle requested reconsideration, which the court denied.  JA183-85.

A year later, after the defendant in *Four-U* successfully raised preclusion arguments based on *Myers*, *see* 821 F. Supp. 2d at 952-55, *aff'd*, 701 F.3d at 1097-1103, von Drehle tried a third time to raise its own preclusion arguments.  *See* D.E.275; D.E.276.  The district court reserved judgment before trial.  JA233-34.

## F.    The Jury Finds von Drehle Infringed Georgia-Pacific's Trademarks

The trial this Court ordered finally commenced on January 4, 2012.  JA652; *see* JA227.  Georgia-Pacific presented extensive evidence that stuffing enMotion® dispensers with von Drehle's towels created a likelihood of confusion and harm to Georgia-Pacific's reputation.  *See*, *e.g.*, JA52, 55-56, 206-10, 286-87, 291-303, 352-53, 411, 418-29, 456, 462-63.  von Drehle presented one witness—its president—who testified about his personal views of the propriety of stuffing in the industry.  JA497-516.  von Drehle offered no empirical evidence regarding actual consumer confusion, but the jury learned that von Drehle's own survey expert found substantial consumer confusion.  JA209-10, 428-29.

Consistent with controlling precedent, *see* JA150-51, the court instructed the jury that to find von Drehle liable for contributory infringement, it had to find that von Drehle "kn[ew] that somebody is … filling" enMotion® dispensers "with paper that would violate the trademark."  JA565.  Proving von Drehle's intent was not

15

difficult:  von Drehle had "candidly admitt[ed] it developed its 810-B Toweling for the specific purpose of end-user customers stuffing," JA151, and acknowledged marketing the 810-B towel for that use, JA52-56, 287-91.  For years it knew that "every roll of 810B … was going to be used in an enMotion dispenser," "causing … headaches" for Georgia-Pacific.  JA56, 286.

The jury returned a verdict for Georgia-Pacific.  JA575.  It found that von Drehle "infringed on [Georgia-Pacific's] valid trademark," and awarded "damages" dating back to Georgia-Pacific's 2005 cease-and-desist letter.  *Id.*; D.E.320.  Georgia-Pacific timely moved under the Lanham Act for a permanent injunction, treble damages, attorney's fees, and prejudgment interest, D.E.322; D.E.324; D.E.325, which the parties fully briefed.

### G.    This Court Rejects von Drehle's Attempt To Evade The Verdict Based On Its Waived Preclusion Defenses

Before addressing remedies, and despite its rulings *before* the verdict barring von Drehle from asserting its waived preclusion arguments, the district court allowed von Drehle to raise preclusion defenses *after* the verdict based on *Myers*, in light of *Four-U.* JA638.  The court alternatively invoked preclusion *sua sponte*.

16

*Id.* It held that claim and issue preclusion based on *Myers* barred Georgia-Pacific's

claims against von Drehle, and vacated the verdict. JA640-42.[5]

This Court again reversed in a published opinion in March 2013. JA644-60.

It agreed with Georgia-Pacific that "von Drehle waived its preclusion defenses

purportedly arising from the *Myers* judgment," and that "the *Four-U* decision"—

which had addressed only the preclusive effect of *Myers* in *Four-U*, not the

merits—"did not have any independent preclusive effect or otherwise serve to

'revive' von Drehle's waived preclusion defenses." JA659. Nor could the district

court appropriately invoke preclusion *sua sponte*. JA660. This Court vacated the

district court's judgment and remanded "with the specific instruction that the

district court reinstate the jury verdict in favor of Georgia-Pacific and consider

Georgia-Pacific's request for injunctive and other appropriate relief." *Id.*

von Drehle sought panel and en banc rehearing, contending *inter alia* that

the panel's decision conflicted with *Myers* and *Four-U*. Pet. for Reh'g 8-10, 13-

15, No. 12-1444 (4th Cir. Mar. 28, 2013) (D.E.56). No judge requested a poll.

JA661-62. von Drehle also sought to stay this Court's mandate while it sought

Supreme Court review, pressing the same points and arguing that the panel's

---

[5] The district court conditionally denied von Drehle's separate request to overturn
the verdict based on the sufficiency of the evidence. JA642. von Drehle did not
appeal that ruling.

decision would cause irreparable harm to von Drehle and its distributors in other

circuits.  Stay Mot. 11-15, No. 12-1244 (4th Cir. Apr. 14, 2013) (D.E.60).  This

Court denied the motion.  JA663-64.  von Drehle then petitioned for certiorari,

asserting that this Court's decision conflicted with *Myers* and *Four-U* and would

foment "inconsistency, uncertainty, and forum-shopping."  Pet. for Cert. 2-4, 25-

28, No. 13-41 (U.S. July 8, 2013).  The Supreme Court denied review.  JA866.

### H.    The District Court Enjoins von Drehle's Continued Infringement And Awards Monetary Relief

On remand, Georgia-Pacific renewed its motions for a permanent,

nationwide injunction barring further infringement by von Drehle, and for treble

damages, attorney's fees, and prejudgment interest.  D.E.374; D.E.383.  von

Drehle opposed Georgia-Pacific's requests, primarily challenging the injunction.

von Drehle argued principally that no injunction was warranted because Georgia-

Pacific did not face irreparable harm from von Drehle's stuffing, that monetary

relief was an adequate remedy, and that the balance of equities and the public

interest weighed against injunctive relief.  D.E.391 at 7-16.  It then briefly

contended that an injunction should be limited to "account for" the Eighth and

Sixth Circuits' decisions in *Myers* and *Four-U*, respectively.  *Id.* at 16.  von Drehle

also opposed treble damages, attorney's fees, and prejudgment interest.  D.E.396.

After further briefing on Georgia-Pacific's motions, the court held a hearing

at which it permitted von Drehle to present testimony and exhibits.  JA796-852.

18

von Drehle again challenged the entry of injunctive relief, JA832-41, and the court engaged in a lengthy colloquy with counsel regarding the appropriateness of nationwide injunctive relief in light of the *Myers* and *Four-U* rulings.  JA845-50. von Drehle briefly addressed the monetary remedies, urging that "*the standard*" for "prejudgment interest, attorneys fees, and treble damages is essentially the same as what you want to call exceptional case, bad faith, willful infringement."  JA829 (emphasis added).

Based on the parties' briefing and the arguments and evidence at the hearing, the court granted Georgia-Pacific's request for a nationwide injunction and the requested monetary relief.  It held that an injunction was warranted under the traditional four-factor test.  *See* JA853-54 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006), and *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011)).  The evidence "demonstrated that [Georgia-Pacific] suffered irreparable injury to its trademark and the reputation of its enMotion brand by [von Drehle's] infringing activities, which prevented [Georgia-Pacific] from controlling the quality of paper towels dispensed from its enMotion dispensers and further confused and deceived consumers."  JA854.  The jury's award alone was "inadequate" to redress that harm because it "would not prevent [von Drehle] from continu[ing] to infringe in the future," and it would be "onerous" to force Georgia-Pacific to "polic[e]" von Drehle's ongoing sales

everywhere. *Id.* The balance of equities also weighed in Georgia-Pacific's favor: von Drehle's actions had been found unlawful, and it had "no 'equitable interest in perpetrating trademark infringement.'" *Id.* (citation and brackets omitted). And "the public interest is best served by a permanent injunction that would prevent further trademark infringement." *Id.*

Based on those findings, the court enjoined von Drehle "from interfering directly or indirectly with plaintiff's trademark rights," specifying that "any deliberate or purposeful placement of defendant's paper towels in plaintiff's enMotion dispensers shall constitute a violation of this permanent injunction." JA855. The court did not restrict the injunction geographically, thus rejecting von Drehle's contention that injunctive relief must be limited based on *Myers* and *Four-U.*

As to monetary relief, the court found that von Drehle's "infringement was willful and intentional," and—exercising its authority under 15 U.S.C. § 1117(a), and "its discretion … in light of the facts and circumstances of this case"—determined that treble damages were "appropriate." JA855-56. Similarly, citing this Court's precedent establishing that attorney's fees are appropriate in cases of willful infringement, the district court held that an award of attorney's fees was appropriate here. JA856 (citing *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 441 (4th Cir. 2011), *People for Ethical Treatment of*

20

*Animals v. Doughney* (*PETA*), 263 F.3d 359, 370 (4th Cir. 2001), and *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992)).

Finally, again invoking its "discretion," the court awarded prejudgment interest.[6]

von Drehle sought a stay of the court's ruling, which was denied.  JA859.

## SUMMARY OF ARGUMENT

Abandoning its primary position below, where it focused on opposing any injunction that would curtail its infringement, von Drehle now relegates the injunction to an afterthought, disputing only the territorial scope of the injunction the district court crafted.  Instead, it devotes the bulk of its submission to challenging the monetary relief that the court awarded to make Georgia-Pacific whole.  These retooled attacks on the district court's remedial order are meritless.

The district court acted well within its broad discretion by enjoining von Drehle from infringing Georgia-Pacific's trademark rights anywhere in the country.  The Lanham Act authorizes nationwide injunctions, and such relief is plainly appropriate here to safeguard Georgia-Pacific's nationwide rights from von Drehle's deliberate, nationwide infringement.  von Drehle's claim that the

---

[6] von Drehle challenged the amount of attorney's fees Georgia-Pacific requested, D.E.339 at 6-7, but the district court found that the requested amount was "reasonable," JA856, and von Drehle does not challenge that ruling on appeal. The district court also allowed Georgia-Pacific's costs, JA858-59, which von Drehle does not challenge, Br. 3.

21

injunction must be narrowed to avoid interfering with the Eighth and Sixth Circuits' decisions in *Myers* and *Four-U* is merely a preclusion argument in disguise, which this Court has already held von Drehle waived. The injunction, in any event, does not interfere with *Myers* or *Four-U*. von Drehle was not a party to either case, and neither case addressed the legality of von Drehle's conduct or conferred any right on von Drehle's distributors to obtain von Drehle's knock-off towel for a purpose that the jury here found unlawful.

The district court likewise soundly exercised its discretion in awarding Georgia-Pacific treble damages, attorney's fees, and prejudgment interest to compensate it for the immense harms it suffered from, and the burdens it bore combatting, von Drehle's brazen and adjudicated infringement. von Drehle challenges those awards, fielding for the first time on appeal a grand legal theory of Lanham Act remedies that contradicts its arguments below and has no foothold in the statute or this Court's precedent. At bottom, all of its claims are meritless attacks on the district court's factual finding that von Drehle willfully infringed Georgia-Pacific's trademarks and on the district court's exercises of discretion.

The district court's straightforward, fact-bound decision is correct and should be affirmed.

## STANDARD OF REVIEW

This Court reviews only for abuse of discretion a district court's decisions whether to award an injunction, *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 392 (4th Cir. 2001), *abrogated on other grounds*, *The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 550 n.2 (4th Cir. 2012), enhanced damages, *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006), attorney's fees, *Newport News*, 650 F.3d at 441, and prejudgment interest, *G. ex rel. Ssgt RG v. Ft. Bragg Dependent Schs.*, 343 F.3d 295, 311 (4th Cir. 2003).

## ARGUMENT

### I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ENJOINING VON DREHLE'S ADJUDICATED INFRINGEMENT NATIONWIDE.

With a single exception, the propriety of the injunction that the district court imposed to prevent further infringement of Georgia-Pacific's trademarks by von Drehle is undisputed.  von Drehle staunchly opposed any injunction below, arguing that its infringement caused Georgia-Pacific no irreparable harm, that monetary relief is good enough, and that the equities and the public interest weigh against an injunction barring further infringement.  D.E.391 at 7-16.  After two rounds of briefing and an evidentiary hearing, however, the district court rejected all of those contentions, JA852-53, and on appeal von Drehle abandons them.  Br. 50-56.  Nor does von Drehle claim that the injunction sweeps too broadly in terms of the *actions* that it prohibits.  By failing to raise any of these points in its opening brief,

23

it has waived them.  *United States v. Bowles*, 602 F.3d 581, 583 n.* (4th Cir. 2010).

Instead, at the end of its brief, von Drehle now challenges only the injunction's *geographic* scope.  Br. 50-56.  It claims that the district court abused its discretion by enjoining von Drehle from engaging in its now-adjudicated misconduct *outside* this Circuit's boundaries.  *Id*.  That contention, which the district court considered and rejected, *see* JA 845-50, 852-53, is baseless.

### A.    A Nationwide Injunction Is Appropriate To Protect Georgia-Pacific's Nationwide Rights From Nationwide Infringement.

von Drehle does not challenge the district court's authority to enjoin infringing conduct nationwide.  And for good reason:  The Lanham Act expressly contemplates injunctions enforceable across the country.  It authorizes "any district court of the United States" to issue or enforce an injunction "to prevent the violation of any right of the registrant of a" registered trademark, which "shall be operative and may be enforced" by the issuing court or "any other United States district court in whose jurisdiction the defendant may be found."  15 U.S.C. § 1116(a); *see* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:15 (4th ed. update 2013).  The only question raised by von Drehle is whether nationwide relief is appropriate here.

It is.  As von Drehle's own authorities confirm, "injunctive relief should be designed to grant the full relief needed to remedy the injury," *Hayes v. N. State*

*Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993), and therefore

"[n]ationwide injunctions are appropriate if necessary to afford relief to the

prevailing party." *Va. Soc'y*, 263 F.3d at 393.  Nationwide relief is essential here

to protect Georgia-Pacific from the injury caused by von Drehle's infringement.

Georgia-Pacific's federal trademarks undisputedly confer nationwide rights.  *See*

15 U.S.C. §§ 1111-1125; *Armand's Subway, Inc. v. Doctor's Assocs., Inc.*, 604

F.2d 849, 849 (4th Cir. 1979).  And von Drehle's infringement of those rights, and

the resulting damage, also extends across the country.  Georgia-Pacific markets its

enMotion® line throughout the United States, and von Drehle distributes its

infringing towel nationally.  *See* JA142-44, 271-72, 499.  The trial evidence

concerning the adverse effects of von Drehle's infringement was national also—

including three national surveys demonstrating the likelihood of customer

confusion caused by von Drehle's conduct.  *See* JA146, 156-57, 190-210, 418-29.

von Drehle, in fact, does not deny that its infringing conduct is nationwide.

Its very purpose in challenging the injunction's geographic scope is precisely to

*enable* the continued marketing of its knock-off towel in other States.  *See* Br. 54-

56.  Because both the underlying rights and von Drehle's infringement of them are

national in scope, only a nationwide injunction can "afford relief" to Georgia-

Pacific.  *Va. Soc'y*, 263 F.3d at 393.

**B.    There Is No Basis Or Need To Narrow The Injunction To Avoid Purported Interference With Other Courts' Rulings.**

von Drehle nevertheless argues that the injunction must be geographically restricted to avoid "interfer[ing] with the decisions of other circuits," *i.e.*, *Myers* and *Four-U*, cases to which von Drehle was not a party. Br. 50 (capitalization omitted). That is a transparent attempt to revive defunct preclusion defenses and to circumvent this Court's ruling that von Drehle irrevocably waived them. In any event, von Drehle's claim of "interfer[ence]" is meritless.

**1.    von Drehle Waived Any Claim That Other Courts' Rulings Justify Its Continued Infringement.**

This Court made clear in the last appeal that von Drehle waived any arguments that the Eighth Circuit's decision in *Myers* and the Sixth Circuit's ruling in *Four-U* precluded Georgia-Pacific from prevailing on its trademark-infringement claims here. JA659. von Drehle was long aware of its purported preclusion defenses based on those cases, but deliberately chose not to press such arguments here for well over a year, *after* losing on appeal in this Court. *See* JA654-60. By doing so, von Drehle waived any preclusion arguments it might have had, and thus was barred from relying on the *Myers* or *Four-U* decisions to evade responsibility for its infringement in this case. JA659.

von Drehle's contention that the injunction somehow "interferes" with the *Myers* and *Four-U* rulings (Br. 50) is merely a repackaging of those same waived

preclusion arguments.  It contends that the Sixth and Eighth Circuits "addressed the same course of conduct at issue here and the same core factual allegations" but "rejected [Georgia-Pacific's] claim that the same business practice at issue in this case is unlawful." *Id.* at 54.  It follows, von Drehle argues, that it cannot be enjoined from engaging in that practice in those Circuits (or any circuit besides this one).  *See id*.  Even if von Drehle's description of those courts' rulings were accurate, however, *this* Court's decision means that von Drehle cannot hide behind those rulings here.  It cannot evade responsibility, in whole or in part, for conduct the jury here found unlawful, based on the decisions of other courts.

That von Drehle now dresses up its waived preclusion arguments as embodying abstract "principles of comity" (Br. 55) changes nothing.  von Drehle unsuccessfully invoked the same "'comity'" principles, and the same federal "interest in avoiding inconsistent decisions," in support of its preclusion arguments previously.  Appellee Br. 30, No. 12-1444 (4th Cir. Sept. 6, 2012) (D.E.40) (citation omitted).  von Drehle's arguments are the same as before—and are still waived.

It is likewise irrelevant that von Drehle now invokes the Sixth and Eighth Circuits' rulings to challenge only the injunction's scope.  von Drehle is still asserting a preclusion defense—merely a narrower defense that challenges the remedy rather than barring liability altogether.  That is unremarkable; preclusion

defenses can apply to preclude some remedies but not others.  *See*, *e.g.*, *Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301, 316-17 (4th Cir. 2010) (claim preclusion barred some remedies but not prospective injunction).  The crux of von Drehle's argument now, as before, is that it must be allowed to continue its stuffing practice because the Sixth and Eighth Circuits have supposedly deemed its activities lawful.  *See* Br. 55-56.  That is a preclusion argument, plain and simple.  Moreover, the likely practical consequence of von Drehle's "comity" arguments—no less than a categorical preclusion defense—would be not merely to limit the injunction's reach, but to nullify it entirely.  If von Drehle is allowed to market its infringing towels to any distributor outside the Fourth Circuit, it is only a matter of time before its knock-off towels unlawfully find their way back—with a wink and nod from von Drehle—rendering the injunction meaningless.

> **2.    The Injunction Does Not Interfere With Any Other Ruling.**

In any event, there is no basis for von Drehle's claim that the injunction as written "[i]nterferes [w]ith" the *Myers* or *Four-U* rulings.  Br. 50.  Neither decision determined the rights of von Drehle, which was not a party to either case.  The Eighth and Sixth Circuits held only that the distributors involved—Myers and Four-U—were not liable for trademark infringement for reselling the 810-B towel for use in enMotion® dispensers under the particular facts and circumstances presented in each case.  *See Myers*, 621 F.3d at 774-77; *Four-U*, 701 F.3d at 1097-

1103.  And only *Myers* addressed the trademark-law merits; *Four-U* relied solely on issue preclusion.  Neither case holds that von Drehle may do anything.

The district court's injunction thus does not "[i]nterfer[e]" with either ruling. It forbids only von Drehle—acting alone, or through agents or others "in active concert with" it, Fed. R. Civ. P. 65(d)(2)—from "interfering directly or indirectly" with Georgia-Pacific's trademarks.  JA855.  Because the injunction restricts only von Drehle's conduct, it does not forbid anything that the Sixth or Eighth Circuits—addressing *other* parties—allowed.

Unable to show that the injunction creates any conflict with respect to von Drehle itself, von Drehle invokes the rights of others, complaining of the "indirect effect that the injunction will likely have on entities that are not parties to this suit"—*i.e.*, its distributors.  Br. 56.  But nothing in *Myers* or *Four-U* suggests that von Drehle's downstream distributors have an affirmative *right* to acquire von Drehle's towels for stuffing.  *Myers* held that it was not unlawful for one distributor to engage in stuffing with von Drehle's towels that it came to possess, and *Four-U* determined that a different distributor could benefit from the *Myers* ruling.  Neither decision establishes that there must be a supply of knock-off towels available to resell.

Even if the injunction did somehow indirectly interfere with the rights of von Drehle's distributors, that is not a basis for *von Drehle* to complain.  At the

29

very most, it would be a basis for distributors to oppose the injunction. Myers, however, abandoned its bid to intervene in this case. *See* JA185-88; Order, No. 11-2139 (4th Cir. Apr. 6, 2012) (D.E.33). And neither Four-U nor any other distributor attempted to do so. von Drehle should not be excused from respecting Georgia-Pacific's federally protected rights based on the speculative prospect that others who are not parties to this case might wish to benefit from von Drehle's adjudicated misconduct.

The sparse authority von Drehle invokes for restricting the injunction lends it no support. The only decision of this Court that von Drehle offers, *Virginia Society*, 263 F.3d 379, refutes von Drehle's position. There, this Court *upheld* a nationwide injunction preventing a federal agency from enforcing a challenged regulation against the plaintiff itself "anywhere in the country." *Id.* at 394. What the Court rejected was the plaintiff's further request to enjoin the agency from enforcing that regulation against *others*. *See id.* at 393-94. "An injunction covering" the named plaintiff "alone" would "adequately protec[t] it from the feared prosecution" under the regulation, but "[p]reventing the [agency] from enforcing [the regulation] against other parties in other circuits [would] not provide any additional relief to" that plaintiff. *Id.* at 393. Barring enforcement of the regulation "against any other party," moreover, would prevent development of the law and possibly frustrate Supreme Court review by preventing any future case

from arising, thereby "'freezing the first final decision'" concerning the agency's rule. *Id.* (citation omitted).

Here, as in *Virginia Society*, the district court's nationwide injunction should be upheld because it is necessary to protect Georgia-Pacific *itself* from the defendant's unlawful actions. *See* 263 F.3d at 394. The district court did not impose an injunction barring von Drehle from infringing the trademark rights of anyone *else*. By upholding the injunction, this Court thus would *not* "in effect be imposing [its] view of the law on all the other circuits." *Id.* The jury's verdict and this Court's prior rulings resolve the underlying trademark-law issues as between Georgia-Pacific and von Drehle, and the injunction prevents von Drehle from flouting that verdict. But the injunction does not bar other courts from considering any trademark-law issues in disputes between other parties who are *not* bound by the judgment here.

von Drehle's cases from other circuits likewise provide it no support. Both *United States v. AMC Entertainment, Inc.*, 549 F.3d 760 (9th Cir. 2008), and *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298 (6th Cir. 2001), concerned injunctions that, if applied in other jurisdictions, would directly conflict with already-existing decisions. In *AMC*, nationwide relief would cause "substantial interference with the established judicial pronouncements of [other] circuits." 594 F.3d at 773. And in *Herman Miller* a broad injunction protecting

certain rights would conflict with rulings that had "refuse[d] to recognize" such rights.  270 F.3d at 327.  von Drehle identifies no similar conflict here.  All it alleges is abstract tension between the jury's verdict and the Sixth and Eighth Circuits' rulings (Br. 54-55)—which neither the Supreme Court nor any Member of this Court deemed worthy of further review, JA662, 866.

*Herman Miller*, moreover, involved an injunction concerning *state*-law rights, which some States had refused to recognize.  270 F.3d at 327.  The "'serious concerns'" it cited regarding an injunction that would effectively impose such rights in States that had previously rejected them stemmed from States' sovereignty to prescribe their own law, implicating weighty federalism issues.  *Id.* (emphasis and citation omitted).  No similar concerns are present here.  Georgia-Pacific seeks to vindicate nationwide federal trademark rights that apply equally in every circuit.

### 3.   The Injunction Should Not Be Limited To This Circuit.

Even if von Drehle's "comity" argument were not waived and meritless, it would not justify limiting the injunction to this Circuit alone.  If comity concerns necessitated narrowing the injunction at all (and they do not), at *most* they would warrant only exempting the independent conduct of others already governed by the only extant supposedly contrary decision von Drehle identifies:  the Eighth Circuit's ruling in *Myers*.  That, indeed, is the approach followed by von Drehle's

own authority. *See Herman Miller*, 270 F.3d at 327 n.16 (upholding injunction as to "*those states that have not addressed the issue*" (emphasis added)).

Only *Myers* addressed the merits of any stuffing issue, holding that stuffing by one particular distributor did not violate Georgia-Pacific's trademarks. *Four-U* considered only *Myers*'s preclusive effect in one other case. There is thus no basis to bar application of the injunction outside the Eighth Circuit—or to prevent its application anywhere as to von Drehle, which is subject to *this* Court's jurisdiction. The purely hypothetical possibility that other courts might embrace von Drehle's view of trademark law in the future does not warrant allowing von Drehle now to evade the verdict virtually everywhere.

## II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING TREBLE DAMAGES, ATTORNEY'S FEES, AND PREJUDGMENT INTEREST TO COMPENSATE GEORGIA-PACIFIC FOR THE FULL COSTS OF VON DREHLE'S DELIBERATE INFRINGEMENT.

Having abandoned its central challenge below, von Drehle devotes the lion's share of its submission to disputing the monetary relief the district court awarded to make Georgia-Pacific whole. Unlike in the district court, where it tendered a smattering of picayune, factbound arguments to withhold treble damages, attorney's fees, and prejudgment interest, von Drehle now dresses up those claims as legal error with a grand theory of Lanham Act remedies. That theory is literally novel, as the district court never heard it. Under von Drehle's theory, only bits and

pieces of which it presented below, trademark-infringement plaintiffs apparently can recover only the amount of injuries specifically proved—notwithstanding the statute's express provision for enhanced recovery—and any remedy beyond actual damages is barred so long as any court elsewhere *might* entertain the infringer's arguments.

von Drehle's crabbed conception of the relief that the Lanham Act affords to victims of willful infringement turns the statute on its head and badly distorts this Court's precedent. And its claims that alleged industry practice, purportedly corroborated by the rulings of other courts, proves that it acted in good faith all along are merely attacks on this Court's prior rulings and the jury's verdict.

### A.    The District Court Did Not Abuse Its Discretion By Awarding Treble Damages For von Drehle's Willful Infringement.

von Drehle first challenges the district court's award of treble damages. The Lanham Act expressly authorized the court, in its discretion, to award enhanced damages, and the record fully supports the court's finding that von Drehle's infringement was willful and warranted an enhanced recovery. Despite agreeing below that "bad faith, willful infringement" supports treble damages, JA829, von Drehle now argues that such relief is not available here despite the district court's finding of willfulness. The Lanham Act, it argues, does not permit trebling of awards based on a defendant's profits *at all*. Br. 25-26. And even if it did, von Drehle contends, the Act forbids a court from awarding any enhanced relief absent

34

a specific finding that such relief is necessary to compensate the plaintiff. *Id.* at

23-26. According to von Drehle, a finding that infringement was willful is *not*

enough; to award treble damages, it claims, a court must weigh a host of other

factors, which von Drehle imports from this Court's decision in *Synergistic*, 470

F.3d at 175, a case that did not involve trebling. Br. 26-34.

      None of von Drehle's challenges to the treble-damages award has merit. Its

legal theory is at war with the statute, this Court's prior decisions, and with itself.

Its attacks on the district court's factual findings are equally baseless.

      **1.    The District Court Had Broad Discretion To Award Treble Damages Based On Its Finding Of Willful Infringement.**

      The Lanham Act expressly empowered the district court to award an amount

*greater* than the damages found by the jury to make Georgia-Pacific whole for all

of the harms von Drehle's infringement has caused. The Act authorizes plaintiffs,

"subject to the principles of equity, to recover (1) defendant's profits, (2) any

damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C.

§ 1117(a); *Synergistic*, 470 F.3d at 176. As the reference to "principles of equity"

indicates, Section 1117 "confers a great deal of discretion on a district court in

fashioning a remedy for Lanham Act violations." *Larsen v. Terk Techs. Corp.*, 151

F.3d 140, 149-50 (4th Cir. 1998); 5 McCarthy, *supra*, § 30:89.

      Specifically, whatever the basis of the plaintiff's proven injury—profits,

damages, or both—the statute expressly permits the court to award a greater sum.

15 U.S.C. § 1117(a). "In assessing damages," the court "may enter judgment, according to the circumstances of the case, for any sum *above* the amount found as actual damages, not exceeding three times such amount." *Id.* (emphasis added). Likewise, if "the amount of the recovery based on profits is either inadequate or excessive, the court may *in its discretion* enter judgment for *such sum as the court shall find to be just*, according to the circumstances of the case." *Id*. (emphases added). Congress made clear that the total, enhanced award "constitute[s] compensation and not a penalty." *Id.*

These provisions reflect Congress's recognition that the injuries a plaintiff suffers may far exceed the concrete damages it can prove with absolute precision at trial. As the Supreme Court has made clear, demonstrating the extent of the harms caused by illegal conduct often may be impossible for many reasons, including the nature of the harm that the defendant's conduct caused. *See Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927). But that is no reason to allow the defendant "whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff" to evade responsibility. *Id.* "[I]t does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981) (internal quotation marks

36

omitted); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

Accordingly, as Congress has done in the antitrust laws and in other contexts, the Lanham Act empowers courts to award relief beyond the injuries a plaintiff proves, regardless of whether those proven injuries are measured by actual damages, the defendant's profits, or both. 15 U.S.C. § 1117(a). This remedy "constitute[s]" part of the plaintiff's "compensation," *id.*, and helps to "provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from [the] defendant's conduct." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991).

Invoking its broad "discretion" under Section 1117(a), the district court concluded that "an award of treble damages is appropriate," based on its finding that von Drehle's infringement "was willful and intentional" and "in light of the facts and circumstances of this case." JA855-56. That conclusion was correct and well within the court's wide discretion. von Drehle's infringement subjected Georgia-Pacific to an array of additional harms beyond the specific sales stolen by von Drehle itself, none of which is easily calculable or necessarily captured in the damages the jury awarded. That infringement threatened the strong reputation for reliability and quality that Georgia-Pacific has painstakingly built for its

enMotion® brand.  *See* JA352-53, 411, 429, 472.  Stuffing prompted complaints from customers, *see* JA54, 57, 292-93, 296-97, and, as von Drehle foresaw, "caus[ed] … headaches" for Georgia-Pacific.  JA56, 292.  Indeed, end-user dissatisfaction with the performance of enMotion® dispensers when stuffed with von Drehle's knock-off towel may have cost Georgia-Pacific untold additional sales.  Potential customers whose experience with enMotion® was tainted by the 810-B may have been dissuaded from acquiring the enMotion® system or other Georgia-Pacific products.  The district court's conclusion that enhanced damages are appropriate here is thus entirely sound.

### 2.    von Drehle's Attacks On The District Court's Treble-Damages Award Are Meritless.

von Drehle alleges a tangled hodgepodge of "legal errors" that impugn the district court's ruling.  Br. 21.  Its claims cannot be squared with the statute, case law, or common sense, and boil down to baseless attacks on the district court's amply supported factual findings.

### a.    The Lanham Act Authorizes Trebling Awards Based On The Defendant's Profits.

von Drehle half-heartedly suggests that the district court could not treble the jury's award at all.  Br. 25-26.  Damages and profits, it contends, are subject to different standards, and only damages—*not* "an award based on profits," which it

claims the jury awarded here—can be trebled under Section 1117(a).  Br. 25.  This Court should not entertain that tardy claim, which in any event is meritless.

von Drehle not only forfeited any argument that profits and damages are fundamentally different, but waived it by *inviting* the court and the jury to treat profits and damages interchangeably.  von Drehle's own proposed jury instructions portrayed the defendant's ill-gotten profits as a *component* of, not wholly separate from, the plaintiff's damages.  D.E.294 at 47-48.  Consistent with that view, at trial Georgia-Pacific sought von Drehle's profits as a *measure* of "damages."  JA269, 541-42, 569.  von Drehle's own verdict form, moreover, called for a single, aggregate "damages" determination, if the jury found infringement.  D.E.294 at 71.  And it raised no objection to the court's instructions describing profits as part of damages, JA567-68; *cf.* JA569-71 (objecting to other instructions), or to the jury's verdict awarding a single amount as "damages," JA572, 575.

Having invited the jury to calculate damages *including* profits as a single, undifferentiated sum, von Drehle cannot complain that the district court erred by trebling the jury's damages award without distinguishing profits and damages.  The parties' and the court's shared understanding that profits were a measure of Georgia-Pacific's damages is baked into the jury's verdict, which is now final.  von Drehle did not challenge that verdict in the prior appeal, apart from its waived preclusion defenses.  It cannot collaterally attack the verdict now.

Even if von Drehle could have argued after the jury's verdict that profits and damages enhancements must be considered separately, it forfeited that argument by failing to raise it below during the remedies proceedings. *See Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 206 (4th Cir. 2013). von Drehle opposed trebling the jury's award on various factual grounds, but it did *not* argue that profits cannot be trebled or are subject to a different standard; indeed, it continued to treat profits and damages as equivalent. *See* D.E.339 at 8-9; D.E.396 at 4-7; JA828-51.

In any case, von Drehle's theory that profits cannot be trebled, or are subject to a more stringent standard, is meritless. The Lanham Act allows courts to enhance *any* award, whether it is based on profits, damages, or both. *See* 15 U.S.C. § 1117(a). Although Section 1117(a) specifically mentions trebling only with respect to damages, *id.*, it hardly follows that trebling of profits is forbidden. To the contrary, the statute places *no* express upper limit on enhancements of profits: If the profits proved are "inadequate," the court can, in its "discretion," award *whatever* sum it "find[s] to be just." *Id.* A court's leeway to increase profits-based awards is, if anything, even *wider*. *See* 5 McCarthy, *supra*, § 30:89.

von Drehle cites no authority from this Court to the contrary. It offers a single, out-of-circuit case, *Thompson v. Haynes*, 305 F.3d 1369 (Fed. Cir. 2002)— which it did not cite below, *see* D.E.339; D.E.396; JA796-852—in which the

40

Federal Circuit attempted to predict how the Tenth Circuit would resolve this issue. *See* 305 F.3d at 1374-75. Not only is *Thompson* not controlling, but it is also unpersuasive: It offered virtually no explanation for its conclusion that profits cannot be trebled, and gave no reason why profits-based awards should be subject to a more restrictive standard. *Id.* at 1380.

Moreover, the very Fourth Circuit decision that von Drehle holds out as articulating an across-the-board standard for "all 'damages issues in Lanham Act litigation,'" Br. 29 n.5—*Synergistic*, 470 F.3d 162—undermines von Drehle's forfeited theory. *Synergistic*, like this case, involved a "damages" award that "represented [the infringer's] *profits*." *Id.* at 169, 174 (emphasis added). Yet the Court directed the district court on remand to apply a standard applicable to "damages." *Id.* at 175-76. If *Synergistic* is relevant at all, *but see infra* at 52, it refutes von Drehle's claim that damages and profits should be analyzed differently.

            **b.**      **The Lanham Act Did Not Require The Court To Find That Treble Damages Were Necessary To Compensate Georgia-Pacific.**

von Drehle alternatively claims that treble damages are inappropriate here because Section 1117(a) forbids recoveries that go beyond "compensat[ing]" the plaintiff, and that the district court did not specifically find that enhanced relief was necessary to compensate Georgia-Pacific. Br. 23. And the jury's award, von

Drehle claims, fully redressed Georgia-Pacific's loss. *Id.* at 23-26. That claim cannot be squared with the statute or the facts.

The Lanham Act expressly provides for monetary awards that *exceed* the actual damages and profits found by the trier of fact. *See* 15 U.S.C. § 1117(a). That provision refutes any notion that recovery is rigidly confined to recompensing the injury found by the jury. von Drehle's view would effectively read this provision out of the statute, foreclosing the enhanced damages that Congress explicitly authorized.

von Drehle seizes on Section 1117(a)'s statement that an enhanced award "shall constitute compensation and not a penalty," 15 U.S.C. § 1117(a), which von Drehle reads as "prohibit[ing] any award beyond" the injury that a plaintiff proves. Br. 23. But von Drehle gets that statement backwards. Properly construed, it is not a *restriction* on enhanced awards, but "a *green light* for the judicial increase of damages or profits to deter willful infringement so long as there is some 'remedial' aspect of the increase." 5 McCarthy, *supra*, § 30:91 (emphasis added). "All the clause does is *declare* that enhanced damages and profits authorized by Congress are 'not a penalty.'" Ralph S. Brown, *Civil Remedies for Intellectual Property Invasions: Themes and Variations*, 55 Law & Contemp. Probs. 45, 76 (1992).

That clarification was necessary because, as Congress well knows, "'penal' damages are disfavored in the law," 5 McCarthy, *supra*, § 30:91, and often trigger

a host of complications that remedial damages do not.  *See* Brown, *supra*, at 75.

Penal damages provisions, for example, are often construed "strictly," *id.*, and are

subject to an array of constitutional and other substantive and procedural

limitations that remedial provisions are not.  *See*, *e.g.*, *Landgraf v. USI Film

Prods.*, 511 U.S. 244, 281 (1994) ("[r]etroactive imposition of punitive damages

would raise a serious constitutional question" under the Ex Post Facto Clause); *Vt.

Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-85

(2000) (False Claims Act qui tam suit could not be brought against States because

treble damages authorized by Act were "essentially punitive in nature").

Congress thus has a powerful incentive, when it does not wish a sanction to

be penal and potentially subject to the full panoply of criminal-procedure and other

restrictions, to specify that the remedy is compensatory and *not* punitive.  If the

statute is silent, courts must guess at Congress's "intent."  *Kennedy v. Mendoza-

Martinez*, 372 U.S. 144, 168-69 (1963).  And they may guess wrong, misreading a

monetary remedy Congress intended to be compensatory as a penalty because it

appears to the court excessive.  *Cf. United States v. Halper*, 490 U.S. 435, 450

(1989) (deeming substantial monetary sanction "punishment" subject to criminal-

procedure protections based on size), *abrogated by Hudson v. United States*, 522

U.S. 93, 100-02 (1997) (repudiating *Halper*'s exclusive focus on size of sanction).

By clarifying that a remedy is compensatory and not punitive, Congress can provide "conclusive evidence" of its "intent" and sidestep those difficulties. *Kennedy*, 372 U.S. at 169. That is all Congress did in Section 1117(a). *See* Brown, *supra*, at 75-76. It clarified that the "enhanced damages and profits authorized by Congress are 'not a penalty,'" but merely part of the plaintiff's compensation, thereby preventing the consequences that would attach to a penal sanction. *Id.* at 76.

Even if Section 1117(a)'s "not a penalty" clause did limit enhanced awards, it provides no basis to overturn the district court's damages award here. von Drehle insists that "[t]he record … shows that [Georgia-Pacific] was fully compensated by the jury's award," but the only record support it offers is Georgia-Pacific's requests to the jury to award von Drehle's profits. Br. 23-24. Those unremarkable requests prove nothing about the extent of harms that, under Section 1117(a), Georgia-Pacific was not required to prove at trial. Under the statute's plain terms, Georgia-Pacific remained free to ask the district court, *after* the jury returned its verdict, to increase the award to provide full compensation for Georgia-Pacific's injuries. That is precisely what Georgia-Pacific did.

von Drehle's assertion that "the jury's award" *itself* "far exceeded von Drehle's profits—or any harm to [Georgia-Pacific]—attributable to the infringement at issue in this case" (Br. 24) is incorrect, and amounts to an improper

44

attack on both the verdict and this Court's prior rulings.  The verdict—reinstated at this Court's direction, *see* JA660, 853—is not at issue on appeal and not subject to any attack.  von Drehle cannot dispute the district court's determination of enhanced damages based on the assumption that the underlying verdict is wrong.

Moreover, von Drehle's only reasons for saying the jury's award is excessive are irrelevant.  Its claim that some of its profits "came from sales in areas where the federal courts" have blessed its stuffing practice (Br. 25) is its waived and meritless preclusion argument all over again.  *Supra* at 26-29.  And its contention that some unspecified number of 810-B towels sold were *not* stuffed in enMotion® dispensers (Br. 24-25) is not only unsupported, but also too late:  It was von Drehle's burden to "prove all elements of … deduction claimed" from the sales figure that Georgia-Pacific established.  15 U.S.C. § 1117(a).  It failed to do so below, and cannot attempt to carry its burden now.

### c.    The District Court's Finding Of Willful Infringement Is Sufficient To Support Treble Damages.

von Drehle further claims that the district court erred by awarding treble damages based solely on its finding that von Drehle's infringement was willful.  Br. 26-28.  von Drehle disputes that finding, and also argues that, before enhancing the jury's award, the court was required, but failed, to address various other factors set forth in *Synergistic*, 470 F.3d at 175.  Br. 28-34.  von Drehle's legal claims are incorrect, and its attacks on the district court's factual findings are meritless.

45

**i.**    von Drehle itself conceded below that willfulness *is* sufficient to

support treble damages.  At the remedies hearing, it argued that "the standard" for

"prejudgment interest, attorneys fees, and treble damages is essentially the same as

what you want to call exceptional case, bad faith, *willful* infringement"—thus

*equating* willfulness with "bad faith," or whatever else von Drehle believes the

Lanham Act requires.  JA829 (emphasis added).  von Drehle cannot complain on

appeal that the district court erred by deeming willfulness sufficient.  If that was

error, von Drehle "invited" it, and cannot seek reversal on that basis.  *Ridge v.*

*Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997) ("invited error … is not

reversible").

The district court, in any case, did not err.  Section 1117(a) directs courts to

apply "principles of equity" in fashioning a remedy.  15 U.S.C. § 1117(a).  A

defendant's intentional violation of the plaintiff's rights provides a powerful

equitable reason to increase the defendant's liability.  Thus, as other courts have

recognized, a finding of willfulness strongly supports enhanced damages.  *See*,

*e.g.*, *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341-45 (6th Cir.

2010); *Taco Cabana*, 932 F.2d at 1127; *Gorenstein Enters., Inc. v. Quality Care-*

*USA, Inc.*, 874 F.2d 431, 435-36 (7th Cir. 1989); *see also Vector Prods., Inc. v.*

*Hartford Fire Ins. Co.*, 397 F.3d 1316, 1320 n.2 (11th Cir. 2005) (per curiam).  von

46

Drehle cites no case from this Court holding that a district court cannot, in its discretion, award treble damages based on a finding that infringement was willful.

von Drehle instead (Br. 26-28) faults the district court for drawing guidance from this Court's decision in *Larsen*, 151 F.3d 140, which upheld a treble-damages award based on the defendant's "intentional, willful, knowing, surreptitious and fraudulent passing off" of its knock-off product. *Id.* at 150. To be sure, *Larsen* addressed a counterfeiting claim under Section 1117(b), which erects a presumption of treble damages. *See id.* But that hardly renders *Larsen* irrelevant. As von Drehle concedes, the district court's discretion under Section 1117(a) is *wider* than under Section 1117(b); under Section 1117(a), enhanced damages are "merely permissive," Br. 27, whereas under Section 1117(b) they are mandatory absent "extenuating circumstances," 15 U.S.C. § 1117(b). It was assuredly appropriate for the district court, entrusted with such broad discretion, to seek guidance from analogous contexts where Congress or a higher court has spoken.

The counterfeiting claims addressed by Section 1117(b) provide a close parallel to the claims at issue here. von Drehle marketed its knock-off towel intending that it would be stuffed in Georgia-Pacific's dispensers in place of the real thing. As this Court observed, "[t]his situation is no different from a hotel placing a Coca-Cola® brand fountain dispenser in its lobby for the complimentary consumption of its patrons, while surreptitiously stocking it with generic cola."

47

JA153.  From the standpoint of restroom end-users—whose perspective is highly relevant, JA153-57—von Drehle's conduct presents many of the same risks as traditional counterfeiting.

**ii.**    von Drehle disputes the factual basis for the district court's finding of willfulness, Br. 29-31, but it does not come close to showing clear error.  The jury necessarily found that von Drehle's infringement was intentional.  It was instructed that, to find contributory infringement, it had to find that von Drehle "kn[ew] or induce[d] someone down the line in order to violate the trademark owner's mark" by "continu[ing] to supply" paper towels "knowing that" they "would violate the trademark" and "could readily be passed off as a misleading product."  JA564-65.  By returning a verdict for Georgia-Pacific on that claim, JA575, the jury found that von Drehle was aware of its infringement but continued it anyway.

The district court's willfulness finding, moreover, is amply supported by the record.  This Court recognized that even at the summary-judgment stage, the evidence strongly supported a finding "that [von Drehle] directly induced [others'] infringement and continued to supply its product to distributors knowing that such infringement was taking place."  JA151.  von Drehle "candidly admitt[ed] it developed its 810-B Toweling for the specific purpose of end-user customers stuffing," *id.*, and "intend[ed]" that customers do so, JA287.  As the trial evidence confirmed, von Drehle openly marketed the 810-B for that use, even referring to it

48

as "the enMotion towel," JA287-91, and for years knew that "*every roll* of

810B … was going to be used in an enMotion dispenser," JA286 (emphasis

added).

von Drehle's rejoinders simply rehash its disagreement with this Court's

rulings in the prior two appeals and the jury's finding of infringement.  Its assertion

that it could not have intended to deceive anyone because "courts in two circuits

had held" that stuffing was "not unlawful" (Br. 29) is yet another attempt to bring

in through the back door the preclusion arguments that this Court deemed waived

in the last appeal.  JA659.  Moreover, all of the rulings in *Myers* and *Four-U* were

rendered years *after* von Drehle commenced its stuffing campaign.  *See Four-U*,

821 F. Supp. 2d 948, *aff'd*, 701 F.3d 1093; *Myers*, 2009 WL 2192721, *aff'd*, 621

F.3d 771.  von Drehle could not possibly have relied on those cases—only one of

which (*Myers*) even addressed the merits of any trademark-law issue—in

undertaking and continuing its long-running infringement.

Similarly, von Drehle's claims that it did not willfully mislead anyone—

because purchasers of its towels knew what they were getting, and because public-

restroom users could not have been confused given the "longstanding, widespread

industry practice" of stuffing, Br. 30—are attacks on this Court's ruling in the *first*

appeal, and on the jury's verdict.  This Court squarely rejected von Drehle's claim

that only purchasers of its towels count.  *See* JA153-57.  And neither this Court nor

the jury was swayed by von Drehle's constantly repeated contention that stuffing is standard practice and that end-users therefore could not be confused. *Supra* at 13-14, 15-16; JA498-501, 544-55.

von Drehle's fallback submission—that even if its infringement were willful, it did not evince *bad faith*, Br. 30-31—cannot be reconciled with the law or the facts. Its own authority treats "willful infringement" and "bad faith" as equivalent. *See Synergistic*, 470 F.3d at 175 ("The first [factor]—whether the defendant had an intent to confuse or deceive—addresses whether there has been a willful infringement on the trademark rights of the plaintiff, *or* whether the defendant has acted in bad faith." (emphasis added)). And below, von Drehle likewise described "bad faith" and "willful infringement" interchangeably. JA829.

In any event, the record reveals von Drehle's bad faith in spades. von Drehle not only designed its product for the sole purpose of stuffing in enMotion® dispensers, but knew from the outset of the harm it could cause Georgia-Pacific. By September 2004, its personnel recognized how "stuffing the Enmotion [sic] cabinet" would "caus[e] more headaches for [Georgia-Pacific]." JA56. von Drehle soon received complaints that the 810-B's "towel quality" was "not up to par to the … towel that [Georgia-Pacific] uses," JA57, and its staff knew that the paper was not as soft or absorbent as authentic towels. JA54, 293, 296-97. Other complaints followed, including that the 810-B towel would "not … stay in the

enMotion dispenser." JA292. And von Drehle's chairman admitted that "[i]f Georgia-Pacific's handsfree dispensers were used and a paper towel that was a poor quality or resulted in poor operation of the dispenser"—all of which occurred—it "likely" would "affect how an end-user would evaluate [Georgia-Pacific's] handsfree product." JA456. Those facts readily demonstrate von Drehle's bad faith. *See Employers Council on Flexible Compensation v. Feltman*, 384 F. App'x 201, 207-08 (4th Cir. 2010) (per curiam) (finding bad faith where defendants "admit[ted]" in emails "that their goal … was to 'cause consternation'" for plaintiff, and they conducted "minimal legal research" regarding legality of actions (citation and brackets omitted)).

Any doubt of von Drehle's bad faith is erased by its response when confronted about its infringement. Despite its admission that "every roll" of 810-B towels was being sold for stuffing in enMotion® machines, JA286, von Drehle insisted that its conduct was legitimate because customers *might* purchase its towels for use in the "28810"—its preposterous, makeshift "dispenser," JA60, jerry-rigged from a metal pipe bolted to a block of wood, *supra* at 9-10—which von Drehle conceded was never used *anywhere*. JA287; *see* JA60, 288, 304-05, 456. That cavalier response to serious claims of infringement demonstrates von Drehle's clear disregard for Georgia-Pacific's trademark rights. That von Drehle undertook the charade of developing its ersatz "dispenser" belies its claim that it

51

truly believed that its stuffing was legitimate in light of already-existing industry practice. Indeed, the "28810" itself speaks volumes about the utter insincerity of von Drehle's protestations of good faith.

    **iii.**    von Drehle contends (Br. 28-34) that even if the district court's finding of willfulness were well-founded, the district court erred by failing to weigh it against an array of other factors set forth by this Court in *Synergistic*, 470 F.3d at 175. von Drehle never explains, however, why *Synergistic*'s standard is even relevant here in determining *enhanced* damages. As von Drehle concedes, *Synergistic* "did not involve the trebling of damages," or any enhanced award. Br. 29 n.5; *see* 470 F.3d at 174-76. Moreover, while von Drehle contends that *Synergistic*'s test "addresses [the] issue" of "whether an upward adjustment to the jury award was appropriate to ensure that [Georgia-Pacific] be adequately compensated," Br. 28, *five* of *Synergistic*'s six factors—*e.g.*, the defendant's intent, the plaintiff's delay in seeking relief—have no bearing on the adequacy of compensation.[7]

---

[7] von Drehle's claim that Georgia-Pacific "acknowledged that the six-factor test is applicable here" (Br. 29 n.5) is false. In the passage von Drehle cites, Georgia-Pacific noted that "von Drehle raised other issues to consider" based on "the *Synergistic* case," and argued that those factors actually support trebling here. JA817-18. That is hardly an admission that *Synergistic* controls, but an argument that, *if* it controls, it only undermines von Drehle's position, which is true.

In any event, as Georgia-Pacific explained below, JA817-18, none of the other factors that *Synergistic* recited, individually or collectively, outweighs von Drehle's willfulness, and if anything they further bolster the district court's ruling:

- **Sales diversion**.  von Drehle concedes that sales were diverted.  Br. 31.  Indeed, every sale of von Drehle's towels intended for stuffing in enMotion® is a sale stolen from Georgia-Pacific.  von Drehle argues only that diverted sales cannot support an *enhanced* award.  *Id.*  But it did not advance that argument below.  D.E.396 at 6.  Moreover, von Drehle's new argument is irreconcilable with its own theory:  von Drehle claims that *Synergistic*'s factors govern enhanced damages, but its new argument would mean that the sales-diversion factor is *never* relevant.  Either diverted sales matter, or von Drehle's transplanted test does not fit.

- **Adequacy of remedies**.  von Drehle's claim that other remedies are adequate (Br. 32) simply repeats its argument that, because Georgia-Pacific obtained von Drehle's profits, any other relief is automatically excessive.  But aside from the ipse dixit that profits and an injunction are "more than adequate," *id.*, von Drehle cites nothing besides Georgia-Pacific's requests to the jury for those profits, which prove nothing about its total injuries.  *Supra* at 44.  And von Drehle's conduct posed risks of

harm to Georgia-Pacific beyond specific lost sales—including tarnishing of its brand and goodwill.  *Supra* at 37-38.

- **Unreasonable delay**.  von Drehle also concedes that "[t]here was no delay in this case" by Georgia-Pacific, but dismisses this factor as well, claiming that delay can doom enhanced damages, but that its absence cannot support them.  Br. 32.  That heads-I-win-tails-you-lose approach demonstrates that von Drehle's proposed framework is made to order.

- **Public interest**.  von Drehle's claim that the public interest weighs *against* enhanced damages is particularly puzzling.  Its conduct has been definitively determined by the jury to be unlawful, in large part because it causes public confusion.  The strong public "interest of preventing purchaser confusion" supports discouraging such abuse, and "encourag[ing]" trademark holders to "enforce [their] rights."  S. Rep. No. 93-1400, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136. Failing to provide full redress for such infringement, moreover, would deter investment in innovation and development of new products—such as enMotion® itself—that directly benefit the public.

- **Palming off**.  von Drehle denies that this case involves "palming off"— *i.e.*, the "infringement of the plaintiff's mark to sell its products," *Synergistic*, 470 F.3d at 176—because von Drehle "never attempted to

imitate [Georgia-Pacific's] mark or pass it off as its own," and "any confusion among bathroom customers depends on … an indirect connection between a trademarked dispenser" and the towels inside. Br. 33. von Drehle's claim is simply an attack on this Court's decision in the first appeal, which held that by stuffing, von Drehle *does* "us[e] one or more of" Georgia-Pacific's trademarks for the purpose of selling its 810-B towel and that confusion among restroom users *is* relevant. JA153-57.

In short, even if *Synergistic*'s factors were applicable, they do not, individually or in combination, outweigh the district court's finding of willfulness. This Court can and should affirm the district court's treble-damages ruling on that basis. *See Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 388 n.5 (4th Cir. 2010).[8]

## B.    The District Court Did Not Abuse Its Discretion By Awarding Attorney's Fees.

von Drehle similarly attacks the district court's award of attorney's fees, asserting an equally untenable interpretation of the Lanham Act and reprising the same protestations of innocent conduct. These claims meet the same fate.

---

[8] Even if the district court erred by not specifically reciting *Synergistic*'s factors, and if the Court declines to affirm the judgment below on the existing record, the proper course would not be to *reverse* the decision below, as von Drehle asserts, Br. 56, but instead to vacate it and remand for the district court to address those factors—as the Court did in *Synergistic* itself, *see* 470 F.3d at 176.

55

1. The Lanham Act expressly authorized the district court, in its discretion, to award attorney's fees to Georgia-Pacific if it found the case "exceptional." 15 U.S.C. § 1117(a). As Congress recognized, trademark-infringement cases "present a particularly compelling need for attorney fees." S. Rep. No. 93-1400, at 5, 1974 U.S.C.C.A.N. at 7136. "Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights." *Id*. And "[i]t would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful." *Id*. That is true, Congress recognized, even where treble damages are also awarded. *See id*. ("treble damages" not a "substitute for … attorney fees").

Invoking this broad "discretion," the district court found that "this is an exceptional case" in light of von Drehle's "willful and intentional infringement," and that "an award of attorneys' fees is appropriate." JA856. That conclusion was entirely sound. von Drehle's infringement epitomizes the "deliberate" and "willful" abuse that Congress intended to combat by providing for attorney's fees. S. Rep. No. 93-1400, at 5, 1974 U.S.C.C.A.N. at 7136. And its misconduct forced Georgia-Pacific to labor for more than six years, expending millions of dollars, to bring its claims to trial where the jury found them meritorious. Georgia-Pacific, in

56

fact, incurred even greater burdens; it was compelled to litigate the case for more than a year after the verdict, including a successful appeal to this Court, before securing concrete relief. But as a sign of its good faith, Georgia-Pacific explicitly did *not* request any attorney's fees incurred since January 2012. D.E.383 at 1. The district court's order redressing Georgia-Pacific's burdens was correct.

**2.** von Drehle claims that the district court erred because it applied the wrong legal test in determining that this case is "exceptional" and that fees were therefore appropriate. Br. 35-37. The district court, however, correctly stated the standard prescribed by this Court's precedent and applied it straightforwardly to the facts it had found. This Court "define[s] the 'exceptional case' as one in which 'the defendant's conduct was malicious, fraudulent, willful or deliberate in nature.'" *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004) (citation omitted). A finding of willful infringement thus suffices to warrant attorney's fees. JA856. von Drehle itself equated an "exceptional" case with one involving "willful infringement." JA829. Here, the evidence amply demonstrated, and the jury determined, that von Drehle's infringement was willful. *Id.*; *supra* at 48-50.

von Drehle rejoins that the district court could not award fees here without determining that von Drehle's conduct was *also* "'malicious, fraudulent, [and] deliberate,'" and that von Drehle acted in "bad faith." Br. 37, 39, 41 (citation

omitted).  But its own authorities contradict those claims.  This Court's decisions in *Retail Services* and *PETA*, which von Drehle repeatedly invokes, *id.* at 34, 38, 39, 41, 43, 50, both make clear that the defendant's conduct need only be "'malicious, fraudulent, willful *or* deliberate.'"  *Retail Servs.*, 364 F.3d at 550 (emphasis added) (citation omitted); *PETA*, 263 F.3d at 370.  The Senate Report, from which von Drehle derives its theory, did not suggest that conduct must meet *all* of those descriptions to warrant attorney's fees.  It merely recited the ways courts had variously "characterized" the types of abuses that most concerned Congress.  S. Rep. No. 93-1400, at 5, 1974 U.S.C.C.A.N. at 7136.

von Drehle protests that allowing fees based on willfulness alone would make attorney's fees the rule rather than the exception in trademark-infringement cases.  Br. 35-36, 42-43.  That fear is not only foreclosed by precedent, but unfounded.  Although the jury here necessarily found that von Drehle "kn[ew]" that its knock-off towel "could readily be passed off … as a misleading product," JA564-65, the district court's finding of willfulness is based on much more than the fact that von Drehle's actions were merely volitional.

The district court—which oversaw the trial, saw all the evidence, and has lived with this case since 2005—had before it ample proof that von Drehle's misconduct was extraordinary, driven by illicit motives with knowing disregard of the harm it would cause Georgia-Pacific.  It is unusual for an infringer's president

to admit, without remorse, that his company designed and marketed its infringing product specifically to steal its competitor's sales.  *See* JA54, 286-87, 459, 516, 831, 837, 860.  And it is rare for a defendant to defy cease-and-desist requests as brazenly as von Drehle did here—citing its cobbled-together "dispenser" as an excuse for its ongoing misbehavior.  *See* JA56-57, 292-94, 296-97, 351-52, 456. The evidence here, including von Drehle's internal emails, also showed with uncommon clarity the defendant's awareness from the outset of the harm its misconduct would cause to its competitor.  JA50, 60.  Permitting attorney's fees for such flagrant misconduct will hardly make the exception for attorney's fees in cases of extreme abuse swallow the rule.

Nor do this Court's cases, as von Drehle contends, require district courts to make a separate finding of "bad faith" *beyond* a determination that the infringement was willful.  To the contrary, the Court has made clear that willfulness—or malice, fraud, or deliberate misconduct—*demonstrates* bad faith. In *PETA*, immediately after reciting the rule that "a case is 'exceptional' if the defendant's conduct was 'malicious, fraudulent, willful or deliberate in nature,'" this Court added:  "*In other words*, a prevailing plaintiff must 'show that the defendant acted in bad faith.'"  263 F.3d at 370 (emphasis added) (quoting *Scotch Whisky*, 958 F.2d at 599).  Bad faith is thus merely shorthand for a showing of any of the factors that the Senate Report described.  In any event, von Drehle's

quibbles over the legal standard are academic because the evidence amply establishes bad faith. *Supra* at 50-52. von Drehle reprises the arguments here that it raises in opposing treble damages, which are meritless for the reasons explained above. *See id.*[9]

### C.    The District Court Did Not Abuse Its Discretion By Awarding Prejudgment Interest.

The district court determined "in its discretion" to award prejudgment interest to Georgia-Pacific, JA858, which was forced to wait more than *eight years* for von Drehle's now-adjudicated infringement to end, *see* JA62. von Drehle disputes this award as well, largely repeating its arguments above. These attacks fare no better.

---

[9] This Court "depart[s] from a number of other courts" by "impos[ing] a dual standard of proof upon prevailing plaintiffs and defendants," requiring prevailing *plaintiffs* to prove bad faith to secure attorney's fees, even though *defendants* need not make the same showing. *Retail Servs.*, 364 F.3d at 550 (citing *Scotch Whisky*, 958 F.2d at 599). That "dual standard" established in *Scotch Whisky* cannot be reconciled with the Supreme Court's subsequent decision in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), which rejected a strikingly similar rule applying different standards in copyright cases for recovery of attorney's fees by prevailing plaintiffs than for prevailing defendants. *Id.* at 522-26; *cf. Retail Servs.*, 364 F.3d at 550 n.7 (recognizing that *Scotch Whisky*'s "double standard … may ultimately prove infirm under *Fogerty*"). Georgia-Pacific acknowledges that a panel of this Court is bound by Circuit precedent, and it raises this point solely to preserve it for further review. The Court need not decide the issue here in any event, however, because the evidence here establishes bad faith.

1.      von Drehle does not dispute the district court's authority to award prejudgment interest—and conceded below that "the district court ha[d] discretion whether to award it."  D.E.339 at 7.  Although it observes that the Lanham Act does not *expressly* provide for prejudgment interest, and that this Court has not specifically addressed the issue, von Drehle does *not* claim on appeal that prejudgment interest is therefore unavailable.  Br. 49-50.

Such a claim would be untenable.  This Court, sitting en banc, has made clear that "absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court."  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc).  The Lanham Act is silent regarding prejudgment interest, and therefore, as other courts have held, the district court here had discretion to award it.  *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000); *see also Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990).

Permitting prejudgment interest makes sense because "[a] dollar tomorrow, unless interest is added, does not equal a dollar today."  *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993).  Without prejudgment interest, therefore, the plaintiff's "'compensation is incomplete and the defendant has an incentive to delay.'"  *Sands, Taylor & Wood*, 978 F.2d at 963 (citation omitted).  Indeed,

withholding such interest "'would create an incentive to violate federal law, because violators in effect would enjoy an interest-free loan for as long as they could delay paying out.'" *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009) (citation and alteration omitted). "'[A]warding prejudgment interest'" prevents these unjust windfalls and helps to "'ensure that an injured party is fully compensated for its loss.'" *Fox v. Fox*, 167 F.3d 880, 884 (4th Cir. 1999) (citation omitted).

    **2.**    von Drehle argues that the district court abused its discretion by awarding prejudgment interest here, Br. 49-50, but it identifies no error in the court's ruling. It contends that prejudgment interest is inappropriate because "this case is not 'exceptional.'" *Id.* at 49. But no finding that the case is "exceptional" was necessary; prejudgment interest is simply left to the court's discretion. *See Quesinberry*, 987 F.2d at 1030.

    In any event, as the district court recognized, this case *was* "exceptional." JA856, 858. von Drehle merely refers, without elaboration, to its arguments concerning attorney's fees, Br. 49, which are meritless for the reasons explained above. *See supra* at 56-60.

    Moreover, the extraordinary circumstances here, including the years it has taken for Georgia-Pacific's rights to be vindicated, make prejudgment interest especially appropriate. von Drehle began its infringement, and Georgia-Pacific

started suffering injury, in 2004, and Georgia-Pacific sued in 2005. Yet Georgia-Pacific was forced to wait more than *eight years*—until 2013—to be made whole. Prejudgment interest thus is necessary to "'ensure that [Georgia-Pacific] is fully compensated for its loss.'" *Fox*, 167 F.3d at 884 (citation omitted). von Drehle, which endeavored to forestall final judgment to preserve its profitable infringement as long as possible, should not be allowed to "'enjoy an interest-free loan for as long as [it] could delay paying out.'" *Slupinski*, 554 F.3d at 54 (citation omitted). Trademark infringers should not be encouraged to engage in such dilatory strategies solely to delay their day of reckoning. *See Sands, Taylor & Wood*, 978 F.2d at 963.

## CONCLUSION

For these reasons, the district court's decision should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a), Georgia-Pacific respectfully submits that oral argument is unnecessary in this appeal, which can be resolved through straightforward application of settled law to facts well-developed in the record under highly deferential standards of review.

Dated:  January 29, 2014        Respectfully submitted,

         _s/ Miguel A. Estrada_

Stephen P. Demm            Miguel A. Estrada
John Gary Maynard, III        *Counsel of Record*
HUNTON & WILLIAMS LLP      Jonathan C. Bond
Riverfront Plaza, East Tower     GIBSON, DUNN & CRUTCHER LLP
951 East Byrd Street         1050 Connecticut Avenue, N.W.
Richmond, VA  23219-4074     Washington, D.C.  20036
(804) 788-8331             (202) 955-8500
                            mestrada@gibsondunn.com

W. Kyle Carpenter
WOOLF, MCCLANE, BRIGHT, ALLEN &
   CARPENTER
900 South Gay Street
P.O. Box 900
Knoxville, TN  37901-0999
(865) 215-1000

*Counsel for Appellee Georgia-Pacific Consumer Products LP*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,999 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: January 29, 2014                    Respectfully submitted,


                                    s/ Miguel A. Estrada
                           Miguel A. Estrada
                              *Counsel of Record*
                           GIBSON, DUNN & CRUTCHER LLP
                           1050 Connecticut Avenue, N.W.
                           Washington, D.C.  20036
                           (202) 955-8500
                           mestrada@gibsondunn.com

                           *Counsel for Appellee Georgia-Pacific*
                             *Consumer Products LP*

# STATUTORY ADDENDUM

# STATUTORY ADDENDUM

15 U.S.C. § 1114 ................................................................Add. 1

15 U.S.C. § 1115 ................................................................Add. 6

15 U.S.C. § 1116 ................................................................Add. 8

15 U.S.C. § 1117 ..............................................................Add. 14

15 U.S.C. § 1125 ..............................................................Add. 16

Fed. R. Civ. P. 65 ............................................................Add. 25

**15 U.S.C. § 1114. Remedies; infringement; innocent infringement by printers and publishers**

(1) Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

Add. 1

(A) Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

(B) Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

(C) Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

(D)    (i)    (I) A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action,

regardless of whether the domain name is finally determined to infringe or dilute the mark.

(II) A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has—

(aa) not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

(bb) transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

(cc) willfully failed to comply with any such court order.

(ii) An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—

(I) in compliance with a court order under section 1125(d) of this title; or

(II) in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

(iii) A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

(iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material

misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

(v) A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

(E) As used in this paragraph—

(i) the term "violator" means a person who violates section 1125(a) of this title; and

(ii) the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

(3)    (A) Any person who engages in the conduct described in paragraph (11) of section 110 of title 17 and who complies with the requirements set forth in that paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

(B) A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the

Add. 4

performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

(C) The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

(D) Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of title 17 is liable for trademark infringement by reason of such conduct.

**15 U.S.C. § 1115. Registration on principal register as evidence of exclusive right to use mark; defenses**

**(a) Evidentiary value; defenses**

Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered.

**(b) Incontestability; defenses**

To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065 of this title, or in the renewal application filed under the provisions of section 1059 of this title if the goods or services specified in the renewal are fewer in number, subject to any conditions or limitations in the registration or in such affidavit or renewal application. Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title, and shall be subject to the following defenses or defects:

> (1) That the registration or the incontestable right to use the mark was obtained fraudulently; or
>
> (2) That the mark has been abandoned by the registrant; or
>
> (3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or

(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however*, That this defense or defect shall apply only for the area in which such continuous prior use is proved; or

(6) That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however*, That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or

(7) That the mark has been or is being used to violate the antitrust laws of the United States; or

(8) That the mark is functional; or

(9) That equitable principles, including laches, estoppel, and acquiescence, are applicable.

## 15 U.S.C. § 1116. Injunctive relief

### (a) Jurisdiction; service

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

### (b) Transfer of certified copies of court papers

The said courts shall have jurisdiction to enforce said injunction, as provided in this chapter, as fully as if the injunction had been granted by the district court in which it is sought to be enforced. The clerk of the court or judge granting the injunction shall, when required to do so by the court before which application to enforce said injunction is made, transfer without delay to said court a certified copy of all papers on file in his office upon which said injunction was granted.

### (c) Notice to Director

It shall be the duty of the clerks of such courts within one month after the filing of any action, suit, or proceeding involving a mark registered under the provisions of this chapter to give notice thereof in writing to the Director setting forth in order so far as known the names and addresses of the litigants and the designating number or numbers of the registration or registrations upon which the action, suit, or proceeding has been brought, and in the event any other registration be subsequently included in the action, suit, or proceeding by amendment, answer, or other pleading, the clerk shall give like notice thereof to the Director, and within one month after the judgment is entered or an appeal is taken the clerk of the court

shall give notice thereof to the Director, and it shall be the duty of the Director on receipt of such notice forthwith to endorse the same upon the file wrapper of the said registration or registrations and to incorporate the same as a part of the contents of said file wrapper.

**(d) Civil actions arising out of use of counterfeit marks**

(1)  (A) In the case of a civil action arising under section 1114(1)(a) of this title or section 220506 of title 36 with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

(B) As used in this subsection the term "counterfeit mark" means—

(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of title 36; but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture[1] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

_____

[1]  So in original. Probably should be "manufacturer".

Add. 9

(2) The court shall not receive an application under this subsection unless the applicant has given such notice of the application as is reasonable under the circumstances to the United States attorney for the judicial district in which such order is sought. Such attorney may participate in the proceedings arising under such application if such proceedings may affect evidence of an offense against the United States. The court may deny such application if the court determines that the public interest in a potential prosecution so requires.

(3) The application for an order under this subsection shall—

(A) be based on an affidavit or the verified complaint establishing facts sufficient to support the findings of fact and conclusions of law required for such order; and

(B) contain the additional information required by paragraph (5) of this subsection to be set forth in such order.

(4) The court shall not grant such an application unless—

(A) the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection; and

(B) the court finds that it clearly appears from specific facts that—

(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;

(ii) the applicant has not publicized the requested seizure;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv) an immediate and irreparable injury will occur if such seizure is not ordered;

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

(5) An order under this subsection shall set forth—

(A) the findings of fact and conclusions of law required for the order;

(B) a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;

(C) the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made;

(D) the amount of security required to be provided under this subsection; and

(E) a date for the hearing required under paragraph (10) of this subsection.

(6) The court shall take appropriate action to protect the person against whom an order under this subsection is directed from publicity, by or at the behest of the plaintiff, about such order and any seizure under such order.

(7) Any materials seized under this subsection shall be taken into the custody of the court. For seizures made under this section, the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been seized. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(8) An order under this subsection, together with the supporting documents, shall be sealed until the person against whom the order is directed has an opportunity to contest such order, except that any person against whom such order is issued shall have access to such order and supporting documents after the seizure has been carried out.

(9) The court shall order that service of a copy of the order under this subsection shall be made by a Federal law enforcement officer (such as a United States marshal or an officer or agent of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or may be made by a State or local law enforcement officer, who, upon making service, shall carry out the seizure under the order. The court shall issue orders, when appropriate, to protect the defendant from undue damage from the disclosure of trade secrets or other confidential information during the course of the seizure, including, when appropriate, orders restricting the access of the applicant (or any agent or employee of the applicant) to such secrets or information.

(10)   (A) The court shall hold a hearing, unless waived by all the parties, on the date set by the court in the order of seizure. That date shall be not sooner than ten days after the order is issued and not later than fifteen days after the order is issued, unless the applicant for the order shows good cause for another date or unless the party against whom such order is directed consents to another date for such hearing. At such hearing the party obtaining the order shall have the burden to prove that the facts supporting findings of fact and conclusions of law necessary to support such order are still in effect. If that party fails to meet that burden, the seizure order shall be dissolved or modified appropriately.

(B) In connection with a hearing under this paragraph, the court may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing.

(11) A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in

instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee. The court in its discretion may award prejudgment interest on relief recovered under this paragraph, at an annual interest rate established under section 6621(a)(2) of title 26, commencing on the date of service of the claimant's pleading setting forth the claim under this paragraph and ending on the date such recovery is granted, or for such shorter time as the court deems appropriate.

## 15 U.S.C. § 1117. Recovery for violation of rights

### (a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

### (b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of—

> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

> (2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation. In such a case, the court may award prejudgment interest on such amount at

an annual interest rate established under section 6621(a)(2) of title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

**(c) Statutory damages for use of counterfeit marks**

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

**(d) Statutory damages for violation of section 1125(d)(1)**

In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

**(e) Rebuttable presumption of willful violation**

In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

**15 U.S.C. § 1125. False designations of origin, false descriptions, and dilution forbidden**

**(a) Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation**

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by

protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

(A) For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause

dilution by blurring, the court may consider all relevant factors, including the following:

> (i) The degree of similarity between the mark or trade name and the famous mark.

> (ii) The degree of inherent or acquired distinctiveness of the famous mark.

> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

> (iv) The degree of recognition of the famous mark.

> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.

> (vi) Any actual association between the mark or trade name and the famous mark.

(C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

## (3) Exclusions

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

> (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—

>> (i) advertising or promotion that permits consumers to compare goods or services; or

>> (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

(B) All forms of news reporting and news commentary.

(C) Any noncommercial use of a mark.

## (4) Burden of proof

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

(A) the claimed trade dress, taken as a whole, is not functional and is famous; and

(B) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

## (5) Additional remedies

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if—

(A) the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

(B) in a claim arising under this subsection—

(i) by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

(ii) by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

**(6) Ownership of valid registration a complete bar to action**

The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—

>       (A) is brought by another person under the common law or a statute of a State; and

>       (B)    (i) seeks to prevent dilution by blurring or dilution by tarnishment; or

>       (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

**(7) Savings clause**

Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

**(d) Cyberpiracy prevention**

>   (1)    (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

>       (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

>       (ii) registers, traffics in, or uses a domain name that—

>           (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

(B)    (i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

Add. 21

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

(D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

(E) As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

(2)    (A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name

registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

(ii) the court finds that the owner—

(I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action.

(B) The actions under subparagraph (A)(ii) shall constitute service of process.

(C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

(i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

(ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

(D)  (i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

(I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

(II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

(ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

(3) The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

(4) The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

**Federal Rule of Civil Procedure 65. Injunctions and Restraining Orders**

(a) PRELIMINARY INJUNCTION.

>   (1) *Notice*.  The court may issue a preliminary injunction only on notice to the adverse party.

>   (2) *Consolidating the Hearing with the Trial on the Merits*.  Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) TEMPORARY RESTRAINING ORDER.

>   (1) *Issuing Without Notice*.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

>>      (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

>>      (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

>   (2) *Contents; Expiration*.  Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record.  The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

>   (3) *Expediting the Preliminary-Injunction Hearing*.  If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character.  At the hearing, the

party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) *Motion to Dissolve*.  On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) CONTENTS AND SCOPE OF EVERY INJUNCTION AND RESTRAINING ORDER.

(1) *Contents*.  Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) *Persons Bound*. The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) OTHER LAWS NOT MODIFIED. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. § 2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) COPYRIGHT IMPOUNDMENT. This rule applies to copyright-impoundment proceedings.

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2014, I electronically filed the foregoing Response Brief for Appellee with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system.  Service was accomplished on the following counsel for appellant von Drehle Corp. by the appellate CM/ECF system:

Carter G. Phillips
    cphillips@sidley.com
Richard Klingler
    rklingler@sidley.com
Jacqueline G. Cooper
    jcooper@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000

Michael P. Thomas
    Mthomas@phd-law.com
PATRICK, HARPER & DIXON, LLP
P.O. Box 218
Hickory, NC  28603
(828) 322-7741

*Counsel for Appellant von Drehle Corp.*

s/ Miguel A. Estrada
Miguel A. Estrada